EARL W. JENSEN, APPELLEE, V. LINCOLN HAIL INSURANCE COMPANY, APPELLANT.

FILED JUNE 16, 1933. No. 28492.

88

*Burkett, Wilson, Brown, Wilson & Van Kirk,* for appellant.

*Roland V. Rodman* and *John H. Kuns, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and PAINE, JJ.

EBERLY, J.

This is an action at law by plaintiff Jensen against the defendant, an insurance company incorporated under the

assessment hail insurance law of Nebraska, to recover the sum of $285 and interest, alleged to be the unpaid balance due under the terms of the policy for a hail loss sustained by assured and "adjusted by the parties" in the sum of $1,825. The defendant company admits the issuance of the policy; that plaintiff suffered a partial loss of the crops insured by hail; "that due notice thereof was given; and that said loss was duly adjusted and agreed upon between the parties hereto in the sum of $1,825;" alleges complete payment thereof by the cancelation of plaintiff's premium note in the sum of $599.20, the payment of $690.80 in cash, and the deduction of the sum of $535, to which credit defendant claims it was entitled by virtue of a "ten per cent. deductible hail loss clause" which, in the form of a "rider," was attached to and constituted a part of the policy in suit; and that, further, plaintiff is estopped by having accepted and cashed the check of $690.80 containing an indorsement on the back thereof reciting in effect that it constituted payment in full of the balance of loss in suit. To this answer plaintiff for reply filed a general denial. A trial resulted in recovery by plaintiff as prayed. From the order overruling its motion for a new trial, defendant appeals.

Thus, we have in effect two questions for our determination, viz., the proper construction of the policy in suit, and the question of plaintiff's estoppel.

This instrument in suit provides: "The Lincoln Hail Insurance Company does insure plaintiff to the amount of $5,350 against all direct loss or damage by hail to growing crops on land not to exceed the amount specified in the insured's application," which is copied on the face of the policy. This included 535 acres of wheat composed of five tracts of various sizes, situated in three sections, and in five governmental subdivisions. In the policy there is specified for each tract a separate and distinct amount of insurance. It appears that the hail damage in suit was confined to two of the five separate tracts of wheat in-

sured. The two tracts thus sustaining damage were separately insured under the terms of the policy, in separate amounts, which aggregate $2,500.

The policy also recites that it "is made and accepted subject to the foregoing stipulations and conditions and to the conditions printed on the back hereof, which are hereby specifically referred to and made a part hereof."

Among the "conditions" thus incorporated by reference is section 21 of the by-laws printed on the back of the policy. This section includes the following:

"All losses shall be adjusted by regularly appointed adjusters of the company on the basis of the percentage of the loss sustained to the insurance carried, but in no case shall the company be liable for more than the actual amount of loss sustained. * * * But in no event shall this company be liable for any loss unless the loss or damage by hail equals or exceeds five per cent. of the total amount of insurance herein applying to the particular crop or portion thereof so damaged."

The undisputed evidence is that, in soliciting this as well as other insurance generally, the crop on each separate tract of land was treated as a separate insurance risk. It was separately valued, and a specific amount of coverage was assigned to it. Thus, the "gross premium" stated in the policy was in fact merely the aggregate of the premiums due for risks insured. And so also, under the language referred to, excluding the terms of the rider, it fairly appears that the liability of the company to respond in damages was to be determined by the application of the 5 per cent. clause to each separate tract, and without reference to the percentage of damage sustained by the aggregate crops covered by the policy.

But it is disclosed that, by an agreement of the parties, a rider was attached to the policy. It provides in part:

"Application for ten per cent. deductible hail loss clause. I hereby request that there be attached to and made a part of the hail policy to be issued to me by the

Lincoln Hail Insurance Company, Lincoln, Nebraska (application for which to the amount of $5,350 is made by me this day) the following deductible liability clause, to wit: 'The assured having elected to pay a reduced premium upon the policy to which this rider is attached, by accepting said policy, agrees that the company shall not be liable for any loss or damage by hail to any crop or crops insured, unless the amount of the loss or damage shall exceed ten per cent. of the total amount of insurance provided for in the policy to which this rider is attached, and in event of loss or damage the company's liability therefor shall be reduced by an amount equivalent to ten per cent. of the total amount of said insurance provided for in this policy,' " etc.

This rider also contains the following stipulation:

"This rider shall not modify, qualify or change any of the terms and conditions of said policy except that it shall lessen the liability of the company as herein stated."

It is important, in view of the terms of the rider quoted, to first determine whether the completed contract, resulting from its attachment to the original instrument, now constituted an "entire contract" or is to be regarded as a "divisible contract."

In 14 R. C. L. 939, sec. 114, it is stated: "There may be said to be three distinct rules on this question, each having the support of respectable authority. One rule, which has considerable support, is that where the amount of insurance is apportioned to distinct items, but the premium paid is gross, the contract is entire. The courts of a number of other states have laid down the rule that, where the property insured consists of different items which are separately valued or insured for separate amounts, the contract is divisible, and a breach of warranty or condition as to one item will not affect the insurance on the remainder of the property, even though the premium be entire. There is still another line of cases which take a middle ground between the extreme doctrines

above stated, and hold that the question of the severability of the contract in such cases depends upon the nature of the risk—i. e., that where the property is so situated that the risk on one item cannot be affected without affecting the risk of the other items, the policy must be regarded as entire; but where the property is so situated that the risk on each item is separate and distinct from the risk on the other items, so that what affects the risk on one item does not affect the risk on the others, the policy must be regarded as severable."

This jurisdiction is committed to the view expressed by the second rule. *State Ins. Co. v. Schreck,* 27 Neb. 527; *German Ins. Co. v. Fairbank,* 32 Neb. 750; *Phenix Ins. Co. v. Grimes,* 33 Neb. 340.

In *Home Fire Ins. Co. v. Bernstein,* 55 Neb. 260, we again announced the doctrine:

"A policy of insurance in which the sum thereof is stated in the aggregate, but further expressed in a specific amount on each several designated portions of the insured property, is not an entire and indivisible contract, but as to each division of the property it is entire, though there may be included in a division several articles.

"A condition or provision of such a policy will not be construed as applicable to the property considered as a whole, but as operative and of force relative to each separated portion or division thereof."

Also, in determining the true import of the controlling language of the policy in suit, it will be remembered that this court has frequently announced as a guiding principle of construction that "Courts will construe policies of insurance more strongly against the party by whom the contract has been drafted, and who has had the time and opportunity to select, with care and ingenuity, and with a view to its own interest, the language in which the contract is couched." *Connecticut Fire Ins. Co. v. Jeary,* 60 Neb. 338.

See, also, *Modern Woodmen of America v. Wilson,* 76 Neb. 344; *Farmers Union Grain Co. v. United States*

*Fidelity & Guaranty Co.*, 109 Neb. 142, 148; *Coad v. London Assurance Corporation*, 119 Neb. 188, 190; *Woodring v. Commercial Casualty Ins. Co.*, 122 Neb. 734.

In view of the authorities discussed and cited, it is quite obvious that the provisions of the policy in suit, including as part thereof the "ten per cent. deductible hail loss clause," still express a specific amount of insurance on each designated tract of wheat. The general nature of the insurance contract has not been changed by the attachment of the "rider." The last named instrument expressly provides that it "shall not modify, qualify or change any of the terms and conditions of said policy except that it shall lessen the liability of the company as herein stated." As it was a "divisible policy" before the attachment of the "rider," in view of the language quoted it must remain a "divisible policy" thereafter. It would follow that such expressions in the "rider" as, "unless the amount of the loss or damage shall exceed ten per cent. of the total amount of insurance provided for in the policy to which this rider is attached," will not be construed as applicable to the insured property as a whole, as would be required in the case of an "entire and indivisible contract," but rather as provisions "operative and of force relative to each separated portion or division thereof" (*Home Fire Ins. Co. v. Bernstein, supra,*) which is imperative as the contract now construed is a "divisible contract." In short, with the deductible clause attached, the payable losses must be determined and computed on the basis of a "divisible contract." Therefore, the defendant was entitled, under the 10 per cent. deductible clause, to credit for, and to deduct to the extent of, $250 and no more.

The defendant further contends that, even though $285 was not paid, to which the plaintiff was entitled, the payment by it of a less amount than actually due was effective, under the facts disclosed, to cancel all claims under the insurance contract.

The unquestioned rule in this jurisdiction appears to be: "A debt will not be extinguished by the payment of a less sum than the amount actually due, unless based upon a new and sufficient consideration." *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 44 Neb. 463. See, also, *McIntosh v. Johnson*, 51 Neb. 33; *Canadian Fish Co. v. McShane*, 80 Neb. 551; *Schreier v. Griffin*, 104 Neb. 722.

To meet this situation appellant relies on its defenses of accord and satisfaction, and estoppel, which it pleaded affirmatively in its answer. The burden of proof as to these defenses is necessarily imposed on the insurance company.

The determinative question is whether this burden has been successfully carried, in view of all the circumstances appearing in the record. It appears from the policy in suit that the company involved herein is organized under the assessment hail insurance law of Nebraska, some of the pertinent provisions of which are carried in section 44-912, Comp. St. 1929, as supplemented and modified by other provisions of the Nebraska Insurance Code. It is obvious, therefore, that the statute authorizing its organization, the articles of incorporation, the by-laws duly enacted, the application for insurance, and the policy, together constitute the contract controlling between the parties to this litigation. *Morgan v. Hog Raisers Mutual Ins. Co.*, 62 Neb. 446; *Farmers Mutual Ins. Co. v. Kinney*, 64 Neb. 808; *Sharpe v. Grand Lodge, A. O. U. W.*, 108 Neb. 193.

A damage to the property covered by this hail insurance in the sum of $1,825 is not controverted. It must indeed be deemed liquidated, for it was, under the terms of the insurance contract, admittedly "adjusted" at that amount by an "adjuster" sent out by the insurance company for that purpose, which adjustment appears to have been duly approved. *Treat v. Price*, 47 Neb. 875. An "adjuster" or "insurance adjuster" is a person, copartner-

ship or corporation who undertakes to ascertain and report the actual loss to the subject-matter of insurance due to the hazard insured against. Evidence in the record affords ample proof that the adjustment thus made was approved by the defendant.

Exhibit G, introduced in evidence by the defendant, discloses that on June 23, 1930, the adjuster and claimant agreed in writing that the total amount of the hail loss suffered was $1,825. This instrument also contains an interlineation of the words, "less 10 per cent. deductible, $535." Obviously this line in the original instrument, and also in the duplicate, has been subject to erasures, which evidently were not explained to the satisfaction of the trial court, and as to which the plaintiff in effect testified that the words last quoted were, unknown to him, inserted after the instrument had received his signature.

At a later time a further agreement appears to have been made by the parties by which the insurance company was authorized to deduct from the loss as adjusted the amount unpaid on a premium note executed by plaintiff and in insurer's possession.

On or about September 23, 1930, at a time when there were no matters in present dispute between the assured and the insurance company, the latter mailed to the former a check in the sum of $690.80. Upon the face of this instrument appears the words, "loss check." The signature, "Lincoln Hail Insurance Company, by ——————, Treasurer," appears as part of the printed form, and is completed by the written signature. On the back of this instrument at the top appears, as part of the printed blank, "Loss check for," followed by typewritten words, "Balance of loss on policy 4794 for 1930, less amount of premium paid and deducted claim No. 281." Following these typewritten words appears as a printed part of the blank form the word "charge." Still approximately three inches below the printed indorsement appear the printed words, evidently a part of the original form, "The indorse-

ment of the payee to be a receipt and release in full of account as written above," and, also, "payee indorse here," followed by a blank for his signature. It is admitted that the payee, with his pen, struck out the words constituting the "receipt and release in full" and then signed the blank provided for indorsement. In that form it was transmitted to and paid by the drawee bank, and so far as the present record discloses, no objection or protest was made by the insurance company to this bank on receipt by it of the returned check at the conclusion of the course of business outlined.

The form of this instrument suggests formal compliance by the defendant with the requirements of section 44-912, Comp. St. 1929. This section provides, in part: "All such associations shall deposit in some bank or banks fifty per cent. of all the assessments or premiums received from its members or policyholders, which deposit shall be drawn from said bank for the payment of losses only, and by check or order issued by the treasurer of such association. Each check or order shall designate the name of the policyholder for whose benefit the money is drawn, and shall give the number of his policy." This statutory language, considered as an intrinsic element of the controlling contract, in view of the facts existing at the date of the issuing of this "loss check," suggests the applicability of the maxim, viz., *"Expressio unius est exclusio alterius."*

Waiving the discussion of the application of this maxim to the terms of this insurance contract as we have heretofore defined it, it is obvious that this compact is conclusive as between the parties as to omissions as well as to matters expressed. As there is no affirmative provision therein which expressly or by necessary implication requires the execution of a receipt in full by the assured on payment of a loss under the terms of the policy, no such requirement may be lawfully exacted. The demand for a "receipt in full" relied upon in the instant case was

wholly unsupported by the agreement or by authority of law. 23 Am. & Eng. Ency. of Law (2d ed.) 979; 62 C. J. 677; *Baird v. Union Mutual Life Ins. Co.*, 104 Neb. 352.

So, too, no authority under the contract existed to require the assured to employ the indorsement embodied in the blank form printed on the back of the "loss check." Besides, it appears that this check as actually indorsed by the plaintiff was paid by the drawee bank, and the evidence justifies the assumption that its return from the drawee bank was accepted by the insurance company. Then, too, the money thus remitted actually reached the person whom the drawer intended should receive it. It is obvious that what the payee did in completing his indorsement thereon was strictly within his rights, and was wholly insufficient to raise an estoppel under the facts disclosed. *Federal Land Bank v. Omaha Nat. Bank*, 118 Neb. 489.

As to the defense of accord and satisfaction, we are impressed with the view that the contentions of defendant are foreclosed, and that on this point the present case is ruled by the principles announced in *Johnson v. St. Paul Fire & Marine Ins. Co.*, 104 Neb. 831. See, also, *Canadian Fish Co. v. McShane*, 80 Neb. 551.

It follows that the judgment of the district court is right, is sustained by sufficient evidence, and is

AFFIRMED.