EDWARD C. HEMMER, APPELLANT, V. METROPOLITAN LIFE
INSURANCE COMPANY, APPELLEE.

FILED MAY 12, 1936. No. 29654.

*Fradenburg, Webb, Beber, Klutznick & Kelley,* for
appellant.

*Harley G. Moorhead, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE
and CARTER, JJ.

PAINE, J.

Plaintiff brought action for total and permanent disability under the terms of a group insurance policy issued
to the employees of defendant company. Defendant filed
demurrer to the amended petition, which demurrer was
sustained, from which ruling the plaintiff appeals.

The plaintiff was an employee in the Omaha office of
the Metropolitan Life Insurance Company, and was eligible
to participate in a policy of group insurance in said company. Such insurance took effect April 1, 1929, when he
began his employment as their agent. He was unable to
continue his duties on June 24, 1933, because of a fall,

in which he was injured, which had occurred in December, 1932. The shock to his lower spine had caused the use of his lower limbs to be impaired, resulting in general arthritis, so that he could not keep up his work after said June 24, 1933, from which date he began to receive the temporary disability payments, which continued for one year. After he had received temporary disability benefits for one year, he applied for total and permanent disability benefits. It is admitted that more than five years had then elapsed since he was first employed by the company on April 1, 1929, yet the fact was that he had not been able to perform any services for the company after the date he began receiving his temporary disability, and therefore the defendant argues, in support of its demurrer, that plaintiff never completed five full years of service, as he was not active in the company's service after the beginning of the payment of the temporary disability.

One should not become confused by the fact that it so happened that the employer for whom the plaintiff worked was, in the final analysis, the same company which issued the group insurance policy under which all employees were insured. The defendant claims that the group policy provided that any employee with five years of service, who had been a continuous contributor to the group insurance for not less than four years and six months, could make proof for total and permanent disability benefits as soon as he had received temporary disability benefits for one year, and insists that, as plaintiff was employed on April 1, 1929, at the time that he applied for total and permanent disability benefits he had never completed five years' service.

On the other hand, the plaintiff calls our attention to the photostatic copies of the two instruments attached to the petition as exhibits. The first is certificate No. 5681, issued to the plaintiff, and consists of four pages, and is founded on group insurance contract No. 50, which consists of 24 pages.

The plaintiff insists that under paragraph 3 of the certificate, and on page 3D of the master or group policy, appears the following paragraph, identical in each instrument, and reading as follows: "The service of an employee who has been in receipt of disability benefits shall be deemed to terminate, as of the last day of the period for which such 'benefits were paid, unless he shall immediately have been granted and shall have actually resumed active employment with the employer."

It clearly appears from this paragraph that the "service" of the plaintiff did not terminate when he began to draw temporary benefits, but continued up to the very last day of the time of payment of such temporary benefits, at which time he had then been in "service" more than the required five years, and was eligible to draw total and permanent disability benefits so far as the provision requiring five years' service with the company was concerned.

We are directed to examine several authorities by the defendant company. In *Thull v. Equitable Life Assurance Society*, 40 Ohio App. 486, 178 N. E. 850, recovery was sought for the death of an employee under a group insurance policy issued upon the employees of a manufacturing company. This employee was temporarily discharged July 17, 1930, and was instantly killed in an automobile accident August 3, 1930. The group policy provided the employees should be insured for the term they shall remain in the employment of the manufacturers. This employee had been paid off in full July 17, and 60 cents had been deducted for the group insurance policy for the month preceding the date of his discharge. It was held that the certificate delivered to the employee was no part of the contract of insurance; that such certificate is only a recitation of his right of protection under the terms of the group insurance policy, and that the certificate can give no greater rights than is provided in the policy itself. Doubtless the certificate in this case was one issued by the manufacturing company, and very

properly the insurance company issuing the original group policy would not be bound by a certificate issued by the firm which bought the group policy.

. However, in the case at bar the more usual custom was followed of having the same company which issues the group policy No. 50 also issued the certificate No. 5681 to the employee, and in such case the application, the group policy, the certificate, and all riders or amendments attached would together constitute the entire contract between the parties.

In the case of *Leach v. Metropolitan Life Ins. Co.*, 124 Kan. 584, 261 Pac. 603, it is held that, where an employer insured its employees under a group insurance policy and later makes application for additional insurance, which is accepted, the original application, the original policy, and insurer's acceptance of the amendments, and all other writings constituting the contracts must be considered and construed together in order to ascertain the intention of the contracting parties as to the insurance effected by such contracts. Several other cases are cited in the annotation on group insurance found in 55 A. L. R. 1245: *Bradley v. Prudential Ins. Co.*, 70 Fed. (2d) 988; *Seavers v. Metropolitan Life Ins. Co.*, 230 N. Y. Supp. 366, 132 Misc. Rep. 719; *Gulf Refining Co. v. Home Indemnity Co.*, 78 Fed. (2d) 842.

It appears to the court that there is no conflict in the case at bar between the provisions of the group policy and the certificate issued to the plaintiff and founded thereon, and that there were just two requirements necessary before he could begin receiving total and permanent disability benefits under this group policy. The two requirements were, first, that his disability must have continued for 53 weeks, which it had in the case at bar; and, second, that he must have completed five years of service for the company before the date of the commencement of such disability. His time of employment was but four years, two months and 23 days when his disability payments began, yet the year during which he

drew temporary disability counted as "service" because he was legally still in service, according to the paragraph cited herein.

Provisions in contracts of insurance, which are clearly set forth in appropriate language, and upon which the calculations of the insurer are based, should be enforced, and the court will not rewrite contracts for the parties. *Himelbloom v. Metropolitan Life Ins. Co.*, 128 Neb. 52, 257 N. W. 525; *Williams v. Union Central Life Ins. Co.*, 291 U. S. 170, 78 L. Ed. 711; *Hamblin v. Equitable Life Assurance Society*, 124 Neb. 841, 248 N. W. 397.

In construing these instruments, we find very helpful the following paragraphs from Restatement, Contracts, sec. 235:

"(c) A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together."

"(e) If the conduct of the parties subsequent to a manifestation of intention indicates that all parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation."

In the case at bar, the paragraph of the exhibit attached to the petition which has given us the greatest difficulty is the one reading:

"(c) Total and Permanent Disability Insurance, benefits under which are payable monthly while the employee is totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation or performing any work for wage or profit, and provided such disability has already continued for a period of at least fifty-three (53) weeks and provided that the employee had completed five years of service on the date of the commencement of such disability."

It is contended by the plaintiff that the last two words, "such disability," refer only to "total disability," and that he had completed five years of service at the time he made his application therefor. However, in the very

same sentence, "provided such disability has already continued for a period of at least fifty-three (53) weeks," the words "such disability" in this clause, the defendant insists, refer back to the date of his original injury, to wit, June 17, 1933, at which time he had not been in service for five years. We cannot bring ourselves to say that the same identical words used in the same sentence refer to one thing the first time they are used and to an entirely different thing the second time they are employed. The more rational interpretation is that, where this paragraph is headed in heavy type, "Total and Permanent Disability Insurance," the words "such disability" refer in both cases to one and the same thing, to wit, to total and permanent disability. If it does mean that, then when plaintiff made out his new proofs to secure total disability insurance he would have been in service for five years, as service is defined in the policy, and his disability, which was total all the time, but upon which he had only been allowed to draw temporary benefits up to that time, had continued for more than 53 weeks, and the district court's judgment was, therefore, wrong. This paragraph is explained by the plaintiff to mean a certain definite thing, and by the defendant just as positively to mean an entirely different thing.

It has been held by this court many times that, when the language in an insurance policy is ambiguous, indefinite, or its provisions are in seeming conflict, such language should be construed most strongly against the company, which with great care had chosen the language in which the policy is couched. *Arendt v. North American Life Ins. Co.*, 107 Neb. 716, 187 N. W. 65; *Connecticut Fire Ins. Co. v. Jeary*, 60 Neb. 338, 83 N. W. 78.

It is our conclusion that the petition, with the group policy and certificate attached as exhibits, was not vulnerable to a demurrer, and the ruling of the court thereon is hereby

REVERSED.

GOOD, J., dissents.