[Civ. No. 12858.   Second Dist., Div. Two.   Mar. 19, 1942.]

CHARLES C. FRITZ, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Respondent.

Herzbrun & Chantry, Kenneth N. Chantry and David Mellinkoff for Appellant.

Walker, Adams, Duque & Smith, Henry Duque and Mark E. True for Respondent.

HANSON, J. pro tem.—This is an action brought to recover disability benefits under a group policy of insurance issued in Missouri by respondent in July, 1926, to The Long-Bell Lumber Company of Kansas City, Missouri, as the employer, for the benefit of its employees, of whom plaintiff was one. Respondent's risk under the policy ended at midnight February 28, 1933, leaving the insurer without liability except as to such obligations as had then accrued under the terms of the policy. At the hour just mentioned a new group policy of insurance issued by Business Men's Assurance Company took effect. This policy, like that of respondent's, was procured by the employer for the benefit of its employees, of whom plaintiff was one. On the trial below plaintiff contended (1) that in 1932 he became totally and permanently disabled within the purview of the policy issued by respondent and while it was in full force and effect, and (2) that he submitted to respondent due proof of such disability in June, 1934. The court expressly found that plaintiff was not totally and permanently disabled prior to midnight February 28, 1933. Notwithstanding this finding the trial court

also found that at the time of the trial, in December, 1939, plaintiff was totally disabled as a result of psychoneurosis, and that the condition was presumably permanent and had existed for some time. On these findings judgment went for defendant and the case is here on plaintiff's appeal.

The questions presented are: (1) whether the policy by its terms requires the insured, where he becomes totally and permanently disabled while the policy is in effect, to submit due proof thereof to the New York office of the insurer while the policy is in full force; (2) if the terms of the policy so require, has the requirement been waived by the insurer in the trial below; and, if so, (3) is the admissible evidence sufficient to sustain the finding that plaintiff was not totally and permanently disabled during the period of respondent's risk under the policy.

*First:* Respondent argues that under the terms of the policy its obligation rests not alone upon the existence of insured's disability but is expressly conditioned upon (1) the receipt by it of proof of disability and (2) the receipt of such proof while the employee is insured under the policy and while it is in force. In support of its position it points *first* to the language in the first paragraph of the policy and *secondly* to the language of the second paragraph, both set forth in the margin.[1] However, the second paragraph deals with the computation of the company's liability and not with the time within which proof is to be given. Accordingly, before discussing it we turn to a consideration of the first paragraph, which alone bears directly on the subject.

■ In his written argument counsel for respondent not only rests heavily on the language of paragraph two, but he quotes

[1] "Upon receipt, at the Home Office in the City of New York of due proof that any Employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the Company will waive the payment of further premiums as to such Employee and three months after receipt of such proof will commence to pay, in lieu of the payment of insurance at his death, monthly instalments as defined below to the said Employee or to a person designated by him for the purpose. . . .

"The number of such instalments shall be limited to either sixty, or to one instalment for each $25.00 of Insurance whichever number is less. The amount of each monthly instalment shall be such as the amount of insurance in force on the life of said Employee at the date of receipt of such disability will purchase, as of the due-date of the first instalment, on the basis of three and one-half per centum per annum, compound interest, and on the assumption that the insured

in connection therewith paragraph one and italicizes therein the words "while insured." From this we apprehend that he implies that the pertinent sentence from paragraph one should be deemed to read: "Upon receipt, at the Home Office . . . of due proof [while insured] that any Employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled . . ." But the phrase "while insured hereunder," as a matter of grammatical construction, modifies the word "Employee" and does not refer to the matter of due proof. More persuasive than mere grammatical construction, perhaps, is the support given by the fact that with the phrase "while insured hereunder" is grouped the further phrase, "and prior to his sixtieth birthday." The latter phrase could have no intelligent bearing on the time when due proof should be made, but does appear as a proper, if arbitrary, limit on the time within which disability must occur. Both phrases clearly have reference to the same event, and the second phrase clearly concerns the matter of time of disability and not time of proof. The clear meaning of the words "while insured hereunder and prior to his sixtieth birthday" is that the disability, and not due proof of disability, must occur while the insurance is in force in favor of the insured. This is buttressed by the more explicit language which is found in the certificate[2] which the insurer issued to the plaintiff.

will continue totally and permanently disabled for the period covered by the number of instalments described above.

"The following table illustrates the number of instalments, and the amount of each instalment for certain amounts of insurance:

| "If such Amount of Insurance is: | Maximum Number of Instalments | Amount of Each Monthly Instalment |
|---|---|---|
| * * * | * * * | * * * |
| 10,000 | 60 | 180.00 |

"On approval of claim of such disability, the insurance in force on the life of said Employee under this Policy shall be discontinued as of the date of receipt of due proof of disability."

[2] "Under the terms of the Group Policy mentioned on page one of this Certificate, any employee shall be considered totally and permanently disabled who furnishes due proof to the Company that, while insured thereunder and prior to his sixtieth birthday, he has become so disabled as a result of bodily injury or disease as to be prevented permanently from engaging in any occupation or from performing any work for compensation or profit.

"Three months after receipt of such proof, the Metropolitan Life Insurance Company will pay to such employee, in lieu of the payment of the insurance under said Policy at his death, equal monthly instalments, the number and amount of such instalments to depend upon the amount of insurance in force on the life of such employee at such date, as shown in the following table . . ."

While one would assume, as the first paragraph of the group policy deals with the question of "due proof," that all provisions in respect thereto would be found in that paragraph only, we are told by counsel for respondent that this is not so. To sustain his view he points to the language in the second paragraph, reading: "The amount of each monthly instalment shall be such as the amount in force on the life of said Employee at the date of receipt of proof of such disability will purchase . . ." Because of this language he contends that it follows that "due proof" must be made while the insurance is in force, and that it is a condition precedent to recovery. For this view he cites *Metropolitan Life Ins. Co.* v. *Phillips*, 236 Ala. 259 [182 So. 35]. In that case the language of the policy and the certificate was substantially the same as is here involved. The court there said: "The furnishing of proofs was not merely the event upon which payments should begin, but proof while the policy was in force is, by this policy, a condition precedent to liability for benefits." We agree that by the language used in the policy and certificate there involved, as in the instant case, the obligation is to pay in monthly instalments such an amount "as the amount of insurance in force on the life of the employee at the date of receipt of proof of disability will purchase as of the due date of the first instalment [three months hence], on the basis of 3½ per centum per annum, compound interest," and that this language, read literally, prohibits a recovery where the proof was not made while the policy was in effect. However, we do not agree with the Alabama court if its opinion implies that it is a condition precedent to recovery that the insured allege and prove that due proof was made while the policy was in force. Rather, the provision deals with the amount that will be paid, and that amount is nothing if the policy is not in force on the date the due proof is received. But this is not the same thing as saying that due proof while the policy is in effect is a condition precedent. In other words, the failure to make due proof while the policy is in effect is a matter of defense and not an element of the insured's cause of action.

In viewing the clause in question we think it is quite plain that the insurer had in mind, not that due proof of disability should be given while the insurance was in effect, but that the amount it should pay was to be predicated on the amount

of insurance in effect at the date of due proof rather than that which might have been in effect at the date insured became totally and permanently disabled. Even so, the insurer neglected to provide, whether intentionally or not, for a situation where the insured was wholly and permanently disabled while insured, and who for want of time, disability or otherwise was unable to, or did not, give due proof while the policy was in force. ■ Such a situation could have been covered by a provision that the computation would be made as of the last day the policy was in force. Had the policy, in terms, so provided, it is clear that the insured would be required to give due proof within a reasonable time. If, on the other hand, it may be said that the insurer intended to stand on the literal language used, then it follows that it must be charged with a desire to entrap not only its unwary policy holders but even those who were quite cautious. We are loath to believe that a company of the size and character here involved would stoop to such a practice. ■ The logical and proper place for all provisions as to due proof was in the paragraph dealing with due proof, and not in the one dealing with the computation of the instalments to be paid.

However, it must be conceded that a careful reading of the second paragraph, read alone, makes it clear that the literal language thereof, in direct conflict with the language of the first paragraph, requires, if it may be permitted to control the language of the first paragraph, a holding that the insurer has no obligation to pay the insured anything where he does not submit his due proof of disability while the policy is in full force. Giving full and controlling effect to such an interpretation would require a holding that an insured employee, who through accident became totally and permanently disabled a few minutes or hours before midnight of the day the policy lapsed, would be wholly without redress even though it had not been humanly possible to submit due proof, at the home office of the insurer in New York, before midnight of the day of the injury. As harsh as such a rule would be, it would accord with the literal language of the second paragraph of the policy of insurance. Such a ruling, if it may be said there is no ambiguity in the language involved, could be sustained on the ground that a policy of insurance, like any other contract, should be construed, in the absence of any ambiguity, according to the plain, ordinary

and proper sense of the words used. ■ However, it is plain that the provisions in the second paragraph directly, or at least essentially, conflict with the finality of the language used in the first paragraph. In that situation an insurance contract, like any other contract, is to be construed against the party who is responsible for the contradictory language used. While courts often say that the same rules of construction govern in the interpretation of policies of insurance as in any other contract, it must be admitted that ambiguities are often too easily found in insurance contracts. This is accounted for, perhaps, by the fact that many policies of insurance, particularly group insurance, are regarded merely as manufactured commodities—as easily and quickly purchased as a legal form in a stationery store, or a ready-to-wear suit in a clothing store, represented to be all wool and no shoddy.

So far we have discussed the language of the policy in the light of general rules of law, without referring to precedents. ■ As the contract was issued in Missouri, its interpretation is governed by the laws of that state, and so we turn to the decisions of that state for support of what we have said. ■ The only decision from that jurisdiction, on the point here involved, which has come to our attention is that of an intermediate court of appeal. In the absence of any conflicting decision by any other intermediate court of appeal or by the Supreme Court of that state, and we know of none, the decision must be accepted by the parties as well as by this court as stating the law of Missouri. (*Six Companies of California* v. *Joint Highway etc. of California,* 311 U. S. 180 [61 Sup. Ct. 186, 85 L. Ed. 114] ; *Stoner* v. *New York Life Ins. Co.,* 311 U. S. 464 [61 Sup. Ct. 336, 85 L. Ed. 284] ; *Fidelity Union Trust Co.* v. *Field,* 311 U. S. 169 [61 Sup. Ct. 176, 85 L. Ed. 109] ; *West* v. *American Telephone & Telegraph Co.,* 311 U. S. 223 [61 Sup. Ct. 179, 85 L. Ed. 139, 132 A. L. R. 956].) This is a universal rule. The Supreme Court of the United States has made it plain in the above cited cases that it regards a decision of an intermediate court of appeal of a state as stating the law of the state, unless it is in conflict with the decision of another co-ordinate court, even though such decision is not binding on the highest court of appeal of the state, so long as that court has not pronounced otherwise. In view of that holding the full faith and credit clause would

require us to follow it, even if we were of a different view, which we are not.

■ In *Corcoran* v. *Metropolitan Life Ins. Co.* (Mo.) [93 S. W. (2d) 1027], the Missouri court, in construing the language of a Metropolitan group insurance policy evidently the same as the one before us, said: ''Defendant further contends that plaintiff's recovery should be defeated because of his delay in making his claim for benefits under the policy. Inasmuch as there is no provision in the policy requiring proof to be made within a specified time after disability arises, we can see no merit in this contention.'' In view of the foregoing quotation we take it that the Missouri courts would hold that liability is not dependent on the policy-holder's having given due proof while the policy is in force, and at all events that it is not a condition precedent. But regardless of what the Missouri courts would hold on that particular point, we think they would decide that Metropolitan waived the requirement that due proof be made while the policy was in effect. Moreover, as Metropolitan did not make the point below—and that involves a question of procedure governed by the laws of this state—it has no standing to raise the point in this court.

*Second:* The record discloses that appellant submitted due proof of his disability to the insurer on July 9, 1934. Insurer shortly thereafter denied liability on the ground that insured had not become totally and permanently disabled during the currency of the policy, but it made no claim that the proof tendered was not timely within the terms of the policy. Moreover, the record discloses that when counsel for appellant sought to offer from the files of Metropolitan his letter to it dated July 9, 1934, opposing counsel objected to it because of certain statements contained in it, but stated he had ''no objection to the document going in as proof that due proof was made to Metropolitan.'' In his opening statement to the court counsel for appellant stated that the case would turn on the question as to when the plaintiff became totally and permanently disabled. We think it significant that at no time during the progress of the case did counsel for Metropolitan challenge this statement or make any motions indicating that it was necessary for the insured to allege and prove that due proof of his disability had been given during the period the insurance was in force; nor did it demur to the complaint or raise the point in its answer. The complaint itself alleged that due proof had not been given until July 9, 1934, and

the proof was to that effect. It was not until the court's findings were prepared for signature that there was improperly incorporated therein a negative finding—not within the scope of the issues—that due proof had not been given while the insurance was in effect. As Metropolitan made no issue on the point in the court below it cannot for the first time make it here.

*Third:* The evidence in behalf of appellant was ample to have sustained a finding that he had become totally and permanently disabled while the policy was in force. The only evidence offered by respondent that tended to contradict it consisted of two items. Accordingly we turn to respondent's evidence to ascertain whether it raised a substantial conflict with the evidence of the appellant. A neurologist called by it, basing his opinion on a recital of factual matters, testified that appellant was not totally and permanently disabled prior to a certain date in 1936. On cross-examination the witness disclosed that he was of the opinion that appellant was totally disabled from October 4, 1932, to the latter part of February, 1933, but that he was not so disabled from the latter date to a date in 1936, as he had made sporadic and futile attempts in that interval to resume his work, without success, and so was not totally and permanently disabled until the effort completely failed. · The witness further indicated that his answer to the hypothetical question was predicated on the fact that in his opinion one could not be said to be totally and permanently disabled as long as he made an attempt to, and did, do some minor work. This is not a correct definition under Missouri law, and so the testimony must be held to be inadequate to raise a substantial conflict with the testimony of the witnesses for appellant. It is altogether too vague and inconclusive to support the judgment.

The only other item of evidence produced on the issue by respondent was a report made by government doctors to the Federal Veterans' Bureau. The introduction of the report was objected to on the ground it was hearsay. When that objection was made counsel for respondent stated that his purpose in offering the report was to rebut an inference that appellant was being paid disability benefits by the Veterans' Administration for a condition of total and permanent disability existing prior to 1938. Whether the insured under some other policy was receiving disability benefits, on the

theory that he was or was not totally and permanently disabled while respondent's policy was in force, was not admissible evidence. Much less would the trial court have been privileged to draw any inference from the fact. The objection was overruled and the record admitted in evidence. In support of the ruling respondent argues (1) that the record was admissible in evidence as an exception to the hearsay rule, in that it was a public record made by public officials under an act of Congress; (2) that as counsel for respondent indicated the purpose for which he offered the record, it must be assumed that the trial court considered the record only for such limited purpose for which it was admissible; and (3) that as the evidence was merely cumulative its admissibility did not constitute prejudicial or reversible error. We see no merit in any of these contentions. In the first place, the record was not a public record. By the statute (38 U. S. C. A. 456) it may be disclosed only in proceedings in the nature of an inquest of competency or in judicial proceedings when the Director deems such disclosure necessary and proper. Such a restriction on its disclosure completely annuls the contention that it is a public record. The record was in every respect hearsay and not one within an exception to that rule, and should have been so viewed by the court below.

The further contention that we must assume the trial court admitted the record in evidence for a limited purpose and considered it in evidence only so far as the law permits it, is utterly untenable. The trial court overruled the objection generally, and so did not purport to limit the evidence for a particular purpose. Moreover, respondent did not by a mere statement of its purpose, without restricting his offer, limit the evidence. Accordingly, as the trial court did not announce he was receiving the evidence for a limited purpose, we may not assume it did not consider the record in evidence for all purposes. The notion that a trial court when it admits evidence admits it and considers it only so far as it is admissible under the law is not true, either theoretically or practically. However, as respondent by its argument concedes it was not evidence, it follows there is no evidence to support the findings. The further contention that the admission of the record was not prejudicial or reversible error accordingly need not detain us; this for the reason that without it there was no evidence to sustain the judgment. Accordingly, whether the record was or was not considered

on the vital issue in the case becomes immaterial, as it was inadmissible and there is no other evidence to sustain the findings and the judgment.

A further contention of respondent, that the trial court was entitled to infer that appellant was not totally and permanently disabled while respondent's policy was in force, because he admitted he had claimed and received disability benefits under the later Business Men's policy, is demolished on the reef of respondent's own argument. Such an argument is equally as unmeritorious and equally as futile as the argument that because one sues only one of two joint tort-feasors he admits the other was not a tort-feasor. The rules of logic do have their limits.

From the foregoing discussion it is clear that the finding that the insured was not totally and permanently disabled on or prior to February 28, 1933, is not sustained by the evidence. Accordingly, the judgment must be reversed for a new trial on that issue, and that alone.

Judgment reversed.

Wood (W. J.), Acting P. J., and McComb, J., concurred.

A petition for a rehearing was denied April 17, 1942, and respondent's petition for a hearing by the Supreme Court was denied May 14, 1942.