HAZEL EXSTRUM, APPELLEE, v. UNION CASUALTY AND LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.

91 N. W. 2d 632

Filed July 25, 1958. No. 34243.

*Stiner & Boslaugh,* for appellant.

*Dryden & Jensen* and *Ginsburg, Rosenberg & Ginsburg,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action at law brought by Hazel Exstrum as plaintiff against the Union Casualty and Life Insurance Company, defendant, in the district court for Buffalo County, to recover on a group life insurance policy under which it is alleged that Clayton D. Exstrum became insured with the plaintiff as the named beneficiary. Proof of the death of her husband was made by the plaintiff, and the defendant company refused payment on the ground that as deceased was not in active employment on January 1, 1955, and did not return to active employment prior to his death, he was not eligible for insurance coverage. A jury was waived and a trial had to the court. After the trial, judgment

was rendered for the plaintiff. The defendant has appealed.

On December 6, 1957, an opinion affirming the judgment of the district court was filed. Exstrum v. Union Casualty & Life Ins. Co., 165 Neb. 554, 86 N. W. 2d 568. A motion for a rehearing was granted and a reargument had. We withdraw the former opinion and reconsider the case on the merits.

There is no substantial dispute in the material facts. Prior to 1954 a trust agreement had been entered into between the Central States Area Employers Association, and ten others, as first party, and Central States Drivers Council, Southern Conference of Teamsters, and their affiliated local unions, acting on behalf of their members then or thereafter employed as drivers, helpers, or in such other capacities as would be mutually agreed upon, as the second party. The first party will be hereafter referred to as employer, and the second party as the union.

The trust was denominated Central States, Southeast and Southwest Areas Health and Welfare Fund. Its purpose was to receive the contributions of employers as provided in the agreement between the employers and the unions in order to provide and pay for life insurance for drivers and helpers represented by the unions. The trust fund thus created was under the joint control of representatives of the employers and the unions. Brown Transfer Company was an employer within the agreement. Clayton D. Exstrum was employed by Brown Transfer Company on March 5, 1954, and on September 13, 1954, became a member of the union.

The trustees purchased a 1-year renewable term nonparticipating life insurance policy for the term beginning April 1, 1952, and ending March 31, 1953. The policy was amended as of April 1, 1953. The policy as amended was renewed from year to year and was in full force and effect during the period involved in this

action. Employees in Exstrum's classification were eligible for life insurance upon compliance with conditions precedent in the policy. The trustees were the sole procurers of the insurance and they were the insured under the terms of the policy. Premiums were paid by the trustees to the insurance company. Employees were under no contractual obligation to pay insurance premiums, such premiums being paid by the trustees from the fund maintained by the contributions of the employers pursuant to their agreement with the unions.

Four amended provisions of the policy are cited by the insurance company in support of its claim of non-liability. They are as follows:

"1. The effective date of this policy as to an employer becoming a Contributing Employer after April 1, 1952 shall be the first (1st) day of the calendar month following two (2) full calendar months from the date such employer becomes obligated to make his contributions to the Policyholder. The effective date as to such Contributing Employer may be a date earlier than that set forth by agreement between the Contributing Employer, the Policyholder, and the Company.

"2. Each employee employed on the effective date of his employer's insurance, for whom contributions have been made for two (2) full calendar months on his behalf prior thereto, is insured on such effective date.

"3. Each employee not insured on the effective date of his employer's insurance is insured on the first (1st) day of the calendar month following two (2) full calendar months of contributions made by his employer on his behalf.

"4. Each employee not in active employment on the effective date of his insurance after the effective date of this policy shall be insured on the first (1st) day of his employment."

Placing the most favorable construction on quoted paragraph 3, the first day of the calendar month fol-

lowing 2 full calendar months of contributions by his employer would be December 1, 1954. The evidence shows, however, that Exstrum became ill on November 20, 1954, and never returned to active employment thereafter prior to his death on January 19, 1955. It would appear therefore that Exstrum had never qualified for insurance under the terms of the group policy. The evidence discloses, also, that the trustees, nor anyone else with authority to do so, had not certified to the insurance company that Exstrum had qualified for the insurance, nor had the trustees, or anyone else, paid any premium to the insurance company for insurance on the deceased, Exstrum. It would appear, as contended by the insurance company, that Exstrum had neither qualified nor become insured under the terms of the group policy.

The evidence shows that the insurance company issued a certificate of insurance to the deceased, Exstrum, prior to his death, an act required by the policy and the applicable Illinois statute. The certificate was found among the papers of the deceased after his death. The insurance company admits the certificate was issued and asserts that it was issued through mistake, although there is no evidence to sustain this contention. The pertinent part of the certificate is: "Union Casualty & Life Insurance Company * * * Certifies that it has insured certain employees of Contributing Employers to the Trustees * * * for Group Life Insurance under Group Life Policy Number L.I.T.-90, and that Clayton D. Exstrum an employee, is insured for the sum of $2,500.00 payable in event of death of such employee to Hazel Exstrum—wife beneficiary designated by the employee to receive such benefits as are payable in the event of the death of the employee. Effective Date Oct 1 1954 * * * (Provided Employee is then regularly performing the duties of his occupation)." The evidence is uncontradicted that Exstrum regularly performed the duties of his occupation after October 1, 1954, and until

November 20, 1954. It is not disputed that Exstrum became ill on November 20, 1954, and that he died on January 19, 1955, within the 6-months termination period provided in the policy when the termination of his employment is due to illness. The question to be determined is the effect of the issuance of the certificate of insurance on the liability of the insurance company under the facts recited.

The contract of insurance is an Illinois contract. As such it is governed by the laws of that state. The applicable Illinois statute provides that no policy of group insurance shall be issued or delivered in that state unless it contains the following: "(b) A provision that the policy, the application of the employer or trustee of any association of employees and the individual applications, if any, of the employees insured shall constitute the entire contract between the parties, * * *." Smith-Hurd Ill. Ann. St. Ch. 73, § 843(b), p. 325. The foregoing statute was pleaded by the insurance company in support of its allegations that the certificate was not a part of the contract of insurance.

The insurance company contends that under the foregoing statute the certificate of insurance is not a part of the contract and that the provisions of the master policy control the result in this case under the law of Illinois. It is the general rule that a foreign law or rights thereunder must be proved like any other fact, in the absence of which the law of the forum is ordinarily applied.

We have been cited to no decision of the Supreme Court of Illinois interpreting the pleaded statute of that state; nor has our research revealed the existence of any such decision. We conclude that the question has not been before the Supreme Court of that state. We are cited to the case of Thieme v. Union Labor Life Ins. Co., 12 Ill. App. 2d 110, 138 N. E. 2d 857, in which the court held: "The Illinois Appellate Courts for three different districts, while not having the precise issue

before them, have determined the rights of an insured under a policy of group insurance by treating both the master policy and the certificate as integral parts of the contract. (Citing cases.) As we have heretofore stated, in the absence of a provision to the contrary in the master policy, we should apply the law of Illinois and under that law we are of the opinion that the certificate is a part of the contract." We point out that this case was released for publication on January 8, 1957, a date subsequent to the enactment of the statutes of Illinois herein cited. We necessarily conclude that the certificate of insurance is a part of the insurance contract under the law of Illinois for the reasons stated in Thieme v. Union Labor Life Ins. Co., *supra*.

The insurance company contends that plaintiff failed to plead the law of Illinois and hence she should not be heard to assert for the first time on reargument that there are decisions of the appellate courts of Illinois holding that the certificate of insurance is a part of the insurance contract. We do not think this contention is meritorious. We point out that the statutes of Nebraska dealing with group life insurance contain no such provision as Smith-Hurd Ill. Ann. St., Ch. 73, § 843(b), p. 325. Under the law of Nebraska the certificate of insurance is a part of the insurance contract. Hemmer v. Metropolitan Life Ins. Co., 131 Neb. 14, 267 N. W. 153; Uptegrove v. Metropolitan Life Ins. Co., 145 Neb. 51, 15 N. W. 2d 220. To avoid the effect of these decisions the insurance company pleaded the quoted Illinois statute. The determination of the law of Illinois is a question of fact upon which both parties may submit evidence. The plaintiff, assuming that the group policy was an Illinois contract, produced the appellate court decision of Illinois to establish that the certificate of insurance was a part of the insurance contract under the law of that state. This, plaintiff has a right to do to establish that under the statute pleaded

by the insurance company the plaintiff had a right to recover.

The quesion immediately arises as to the sufficiency of the proof of the law of Illinois. Is the decision of an intermediate appellate court sufficient to establish the law of a sister state? This question does not appear to have been previously before this court. The rule appears to be that such a decision is not only sufficient but should be followed in the absence of a conflicting decision by any other intermediate court of appeal, or by the Supreme Court of the state. The rule is well stated in Fritz v. Metropolitan Life Ins. Co., 50 Cal. App. 2d 570, 123 P. 2d 622, wherein the court said: "As the contract was issued in Missouri, its interpretation is governed by the laws of that state, and so we turn to the decisions of that state for support of what we have said. The only decision from that jurisdiction, on the point here involved, which has come to our attention is that of an intermediate court of appeal. In the absence of any conflicting decision by any other intermediate court of appeal or by the Supreme Court of that state, and we know of none, the decision must be accepted by the parties as well as by this court as stating the law of Missouri. (Six Companies of California v. Joint Highway etc. of California, 311 U. S. 180 [61 Sup. Ct. 186, 85 L. Ed. 114]; Stoner v. New York Life Ins. Co., 311 U. S. 464 [61 Sup. Ct. 336, 85 L. Ed. 284]; Fidelity Union Trust Co. v. Field, 311 U. S. 169 [61 Sup. Ct. 176, 85 L. Ed. 109]; West v. American Telephone & Telegraph Co., 311 U. S. 223 [61 Sup. Ct. 179, 85 L. Ed. 139, 132 A. L. R. 956].) This is a universal rule. The Supreme Court of the United States has made it plain in the above cited cases that it regards a decision of an intermediate court of appeal of a state as stating the law of the state, unless it is in conflict with the decision of another co-ordinate court, even though such decision is not binding on the highest court of appeal of the state, so long as that court has not pro-

nounced otherwise. In view of that holding the full faith and credit clause would require us to follow it, even if we were of a different view, which we are not."

In Fidelity Union Trust Co. v. Field, 311 U. S. 169, 61 S. Ct. 176, 85 L. Ed. 109, the Supreme Court of the United States in dealing with this question stated: "While, of course, the decisions of the Court of Chancery are not binding on the Court of Errors and Appeals, a uniform ruling either by the Court of Chancery or by the Supreme Court over a course of years will not be set aside by the highest court 'except for cogent and important reasons.' Ramsey v. Hutchinson, 117 N. J. L. 222, 223; 187 A. 650. It appears that ordinarily the decisions of the Court of Chancery, if they have not been disapproved, are treated as binding in later cases in chancery (Philadelphia & Camden Ferry Co. v. Johnson, 94 N. J. Eq., 296, 297; 121 A. 900), but there is always, as respondent urges, the possibility that a particular decision of the Court of Chancery will not be followed by the Supreme Court (see Flagg v. Johansen, 124 N. J. L. 456, 461; 12 A. 2d 374) or even by the Court of Chancery itself. See Kicey v. Kicey, 112 N. J. Eq. 459, 461; 164 A. 684. It is the function of the court of last resort to resolve such conflicts as may be created by decisions of the lower courts, and except in rare instances that function is performed and the law is settled accordingly. Here, however, there is no conflict of decision. Whether there ever will be, or the Court of Errors and Appeals will disapprove the rulings in the Thatcher and Travers cases, is merely a matter of conjecture. See West v. American Telephone & Telegraph Co., supra. At the present time the Thatcher and Travers cases stand as the only exposition of the law of the State with respect to the construction and effect of the statutes of 1932, and the Circuit Court of Appeals was not at liberty to reject these decisions merely because it did not agree with their reasoning."

The Supreme Court of Illinois dealt with this question in Moscov v. Mutual Life Ins. Co., 387 Ill. 378, 56 N. E. 2d 399, wherein it said: "Plaintiffs also urge that the Farmers Trust Co. case is of but little authority because rendered by an intermediate court of review of the commonwealth. Royal League v. Kavanagh, 233 Ill. 175, invoked by plaintiffs, held that, in advance of its announcement by the Supreme Court of another State, this court cannot assume the common law in the sister State will be declared to be different from the common law as construed in Illinois. The reason for the existence of this rule has been abolished by the Uniform Judicial Notice of Foreign Law Act. (Ill. Rev. Stat. 1943, chap. 51, pars. 48g-48n.) When the reason for a rule disappears the rule should likewise disappear. In West v. American Telephone and Telegraph Co., 311 U. S. 223, the Supreme Court of the United States said, 'Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' If Courson v. New York Life Ins. Co., 295 Pa. 518, be deemed not decisive of the issue made with respect to the question of Theodore Moscov's alleged mental incapacity, we must accept the decision of the intermediate court of review as stating the law of Pennsylvania, in the absence of any conflicting decision by another appellate court of co-ordinate jurisdiction in that commonwealth or by its highest court of review."

It seems clear that the decision in Thieme v. Union Labor Life Ins. Co., *supra,* although a decison of the intermediate appellate court of Illinois should be accepted as stating the law of Illinois and, as such, is applicable to the situation before us. We are required to hold, under the law of Illinois, the certificate of insurance is a part of the insurance contract in the case presently before us.

It is readily apparent that differences exist in the provisions of the master policy and the certificate. The most important difference is that under the master policy, giving it the construction most favorable to the insured, the effective date as to Exstrum was December 1, 1954, while under the certificate of insurance the effective date was October 1, 1954. If the effective date was December 1, 1954, Exstrum had not qualified for insurance and the insurance company has no liability. If the effective date was October 1, 1954, Exstrum had been thereafter actively employed and was qualified for the insurance, and the basis of the rejection of the claim was without merit. The law is that where a party gives a reason for his conduct and decision touching anything involved in a controversy he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. O'Neil v. Union Nat. Life Ins. Co., 162 Neb. 284, 75 N. W. 2d 739.

Under the law of Illinois the certificate of insurance is a part of the insurance contract. The provisions in the two instruments are in conflict, particularly with reference to the effective date of the policy. It is a universal rule that where provisions of a contract of insurance are in conflict, or subject to more than one interpretation, the provision or interpretation most favorable to the insured will ordinarily be adopted. In Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874, this court stated the rule as follows: "If the contract was prepared by the insurer and contains provisions reasonably subject to different interpretations, one favorable to the insurer and one advantageous to the insured, the one favorable to the latter will be adopted."

We hold therefore that the group policy of insurance here involved is an Illinois contract, that under the law of Illinois the certificate of insurance is a part of the insurance contract, and the effective date of the

policy is controlled by the provisions of the certificate of insurance under the rule of construction herein cited. The defense that the deceased Exstrum had never qualified for insurance under the terms of the policy contract is without merit under the law of Illinois. The judgment of the district court finding for the plaintiff for $2,500, with interest and costs, is therefore correct. An attorney's fee of $500 is allowed the plaintiff for the services of attorneys in this court to be taxed as costs against the defendant.

AFFIRMED.

YEAGER, J., dissenting.

I find no difficulty in concurring in the result arrived at by the majority opinion. I cannot however agree with much of the reasoning employed in arriving at that result.

I do not disagree with the conclusion that the group insurance policy which is the basis of the controversy in this action is subject to interpretation and application of the Illinois insurance code and the pertinent decisions of the courts of Illinois, provided reference thereto becomes necessary. If however the terms of the policy and other documents, which must in the very nature of things be looked to for the ascertainment of the true meaning of the policy, are clear and unambiguous and reflect the intention of the parties, which intention is not violative of law, no valid purpose can be served by reference to the Illinois code or the decisions of the courts of that state.

I agree that a certificate issued by an insurer to a person eligible for insurance under a group insurance policy may properly be construed to be a part of the insurance contract and may even in case of conflict be controlling. It may not however be employed to destroy the clear, meaningful, and unambiguous terms of the engagements between the contracting parties. What I have said will become clear from a reading of the majority opinion and the following which I think is

the true attitude which should be adopted in the determination of this case.

This is an action at law brought by Hazel Exstrum as plaintiff against the Union Casualty and Life Insurance Company, a corporation, defendant, in the district court for Buffalo County, the purpose of the action being to recover on a group life insurance policy whereunder Clayton D. Exstrum became insured with the plaintiff as the named beneficiary. Proof of the death of her husband was made by the plaintiff, and the defendant company refused to allow her claim. By stipulation of the parties, a jury was waived and trial was had to the court. After trial judgment was rendered for the plaintiff. The defendant filed a motion for new trial which was overruled. From the order overruling the motion for new trial and the judgment the defendant appealed.

Following a hearing in this court an opinion was adopted affirming the judgment of the district court. That opinion is reported as Exstrum v. Union Casualty & Life Ins. Co., 165 Neb. 554, 86 N. W. 2d 568. Thereafter the case was before the court on motion for rehearing the consequences of which are that the former opinion was withdrawn.

The case was tried on an amended petition of the plaintiff and an answer thereto by the defendant. A reply was filed after the conclusion of the presentation of the evidence.

The material facts, about which there is no substantial dispute, which are the basis of the action, are that prior to the year 1954 and during that year a trust and trusteeship was in existence. The trust and trusteeship had been created by agreement between Central States Area Employers Association and 10 others, as first party, and Central States Drivers Council, Southern Conference of Teamsters, and their affiliated local unions, acting on behalf of their members now or hereafter employed as drivers, helpers, or in such other capaci-

ties as may be mutually agreed upon, second party.
The first party will be hereinafter referred to as employers and the second party will be referred to as the union.

The trust was denominated Central States, Southeast and Southwest Areas Health and Welfare Fund, and its purpose, to the extent necessary to refer to it herein, was to receive contributions from employers who were members of the first party in order to provide and pay for life insurance for drivers and helpers represented by the second party. The trust will be hereinafter referred to as the fund. The fund was under the joint control of representatives of the employers and the union who are denominated trustees. The union and the employers had no direct control over the trust functions or funds of concern in this action.

Brown Transfer Company, which will be referred to as Brown, was an employer within the meaning of the agreement. From and after September 13, 1954, Exstrum was an employee of Brown and was represented by the union.

By the agreement provision was made, among other provisions, for the acquisition of life insurance for employees in the classification of Exstrum. The trustees were the sole procurers of the insurance and the policy or policies of insurance were taken in their name. Funds for the payment of the premiums were paid and payable into the fund in the hands of the trustees and were payable by the trustees to the insurance company. There was no contractual obligation for payment of premiums for insurance by either the union or the employers on life insurance. Life insurance was available only to members of the union.

The defendant issued to the trustees a 1-year renewable term nonparticipating life insurance policy for the term beginning April 1, 1952, and ending March 31, 1953. The policy was amended as of April 1, 1953. The policy with these amendments was thereafter in full

force and effect and is the entire contract of insurance which is of concern in this case. Two of the amendments are of concern here. The first of these is as follows:

"3. Each employee not insured on the effective date of his employer's insurance is insured on the first (1st) day of the calendar month following two (2) full calendar months of contributions made by his employer on his behalf."

This provision was applicable to Exstrum since it is made clear by the record that he was not employed on the effective date of Brown's insurance. Exstrum was not entitled to insurance until contributions for premiums were made for 2 calendar months after he became eligible for insurance. He became a member of the union September 13, 1954, and was thereafter eligible for insurance. Thus the 2-month period for Exstrum began October 1, 1954, and ended November 30, 1954, unless it was interrupted by operation of the second amendment, which is the following:

"4. Each employee not in active employment on the effective date of his insurance after the effective date of this policy shall be insured on the first (1st) day of his employment."

Under the terms of the second of these quoted provisions, if Exstrum was not in active employment on December 1, 1954, he could not become entitled to insurance thereafter until he again became actively employed.

Exstrum performed no service for Brown after November 20, 1954. He died January 19, 1955. There is evidence that Exstrum was an employee of Brown who did not work regularly but performed service only on call; that he was not called after November 20, 1954; that actually he was not available for work after November 20, 1954, because of sickness; but that he was never discharged as an employee by Brown.

In the light of this evidence the plaintiff insists that

Exstrum remained in active employment until after December 1, 1954. On the other hand the defendant urges that active employment as used in the policy means active and actual engagement in the performance of service for Brown.

Under the definitive and declaratory provisions of the policy of insurance issued by the defendant to the trustees and other facts disclosed by the record, I think it must be said that the contention of the plaintiff in this respect is correct and Exstrum was not, within the meaning of the policy, out of active employment as contended by the defendant.

While it is true that Exstrum was not actually engaged in employment after November 20, 1954, the policy by its terms accords to his status thereafter active employment. The status was removed from the category of inactivity by the declaration that eligible employees shall not be regarded as out of active employment if this is caused by sickness.

The policy defines those employees who were or became eligible for insurance as follows: " 'Eligible employee' as used in this policy means an employee actively at work with a Contributing Employer whose employment is covered under the collective bargaining agreement establishing the Central States, Southeast and Southwest Areas Health and Welfare Fund."

The collective bargaining was on behalf of certain named organizations "* * * acting on behalf of their members now or hereafter employed as drivers, helpers, or in such other capacities as may be mutually agreed upon, * * *." Exstrum came within the categories named on September 13, 1954.

The policy contains provisions as to when termination of the insurance of an employee takes place. It first provides that it shall take place: "Thirty (30) days after termination of employment."

Next it provides: "Termination shall be deemed to occur upon cessation of active employment."

Next is a provision and declaration that an eligible employee may not be regarded as being out of active employment if he is absent on account of sickness. It is to be observed that this definition has reference to those who are covered by the collective bargaining agreement and not necessarily to those who may at the time have or be entitled to insurance protection. It purports to say, when the statement is read with reference to the policy, the trust agreement which by its declarations reflects the collective bargaining agreement, and the purposes to be served, that those who were out of employment on account of sickness may not be regarded as out of active employment. It is as follows: "Cessation of active employment in the classes of employees eligible for insurance shall be deemed termination of employment except that while an employee is absent on account of sickness * * * the insurance shall be deemed to continue until premium payments for such employee's insurance are discontinued."

Any insistence that these provisions of the policy apply only to employees who have been employed a sufficient length of time to have· acquired insurance fails to give full effect to the policy as by its own terms it must properly be interpreted. Further any contention that they refer only to the termination provisions of the policy and therefore have application only to those employees who have by lapse of time become insured is without merit.

The placement of the reservation or exception with regard to inactivity on account of sickness does not cause them to become foreign to the situation of Exstrum after November 20, 1954. In reason instead, in the light of the declarations of the policy construed as they must be with the trust agreement and its references to the collective bargaining agreement, they may well be said to have been appropriately placed to receive the application which has been given to them herein.

It is to be observed that one who has been in active

employment for 2 months has passed beyond the point of mere eligibility for insurance. He is ab initio insured. It would have been simple and understandable for the defendant to have said "insured" or "insured employee" instead of, as it did, "eligible employee" if that had been the purpose and intention. If it had done so there could be no doubt of the meaning. This it failed to do. The reasonable conclusion is that by the use of the word "employee" the intention was to extend the reservation or exception relating to inactivity on account of sickness beyond those who had already become insured.

It becomes necessary only to refer to the provisions of the policy as they have already been pointed out herein to find this intended extension of the reservation or exception. It was clearly intended and so declared to extend the reservation or exception to all "employees eligible for insurance." All of the members of the class which included Exstrum were eligible employees. Employee within the specific definition of the policy means eligible employee. Thus Exstrum was an employee out of work on account of sickness and accordingly had insurance on December 1, 1954.

If it should be said that the policy is capable of some other interpretation as well as the one given to it herein, then the following rule must be applied:

"An insurance policy which is susceptible of more than one interpretation will be given the one most favorable to the insured." O'Neil v. Union Nat. Life Ins. Co., 162 Neb. 284, 75 N. W. 2d 739. See, also, Woodring v. Commercial Casualty Ins. Co., 122 Neb. 734, 241 N. W. 285; Machurek v. Ohio Nat. Life Ins. Co., 125 Neb. 35, 249 N. W. 81; Jensen v. Lincoln Hail Ins. Co., 125 Neb. 87, 249 N. W. 94; Peony Park v. Security Ins. Co., 137 Neb. 504, 289 N. W. 848; Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874.

The policy of insurance provides for the continuance of payment of premiums as a condition of insurance re-

maining in force and effect. The failure to pay premiums was pleaded as a defense. It however is not available as a defense since liability on the policy was denied before action was commenced on the sole ground that Exstrum was not in active employment a sufficient length of time to have insurance under the policy. Under these circumstances the following rule is applicable, which rule removes from consideration any question of whether or not premiums were paid: "A party who gives one reason for his conduct and decision as to a matter involved in controversy cannot after litigation has begun defend upon another and different ground." Serven v. Metropolitan Life Ins. Co., 132 Neb. 637, 272 N. W. 922. See, also, Moore v. Washington Nat. Ins. Co., 135 Neb. 29, 280 N. W. 221; O'Neil v. Union Nat. Life Ins. Co., *supra.*

As pointed out this is an action at law wherein a jury was waived. It calls for the application of the rule that the findings of the court have the effect of a verdict of a jury, and judgment thereon will not be disturbed unless it is clearly wrong. See Scottsbluff Nat. Bank v. First State Bank, 162 Neb. 475, 76 N. W. 2d 445. The findings and judgment of the district court in this case may not be said to be clearly wrong.

For the reasons set out herein the judgment of the district court should be affirmed.