ADA BROWN, APPELLEE, V. WILLIAM A. EHLERS, ADMINIS-
TRATOR, APPELLANT.

FILED MAY 8, 1936. No. 29661.

*William A. Ehlers,* for appellant.

*R. B. Hasselquist, Donald S. Krause* and *Ray L. Williams,* contra.

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and FITZGERALD, District Judge.

PAINE, J.

Evelyn Davis Graham died in Omaha on April 9, 1934, leaving in force three policies of industrial insurance in the Metropolitan Life Insurance Company. Attorney William A. Ehlers was appointed administrator of her estate. The insurance company paid $1,397.46, due on the three policies, into district court. This is an action against the administrator, brought by Ada Brown, a friend of deceased, who had from time to time advanced large sums of money to deceased. The trial court found that the administrator was entitled to all of the estate of the deceased except the proceeds of these three policies, which should go to Ada Brown. The administrator appeals.

The probate proceedings were brought pretty largely at the instance of Ada Brown, who filed a claim in the county court against the estate. Then the said Ada Brown started this independent action in the district court, alleging an oral contract with deceased to bequeath her property to plaintiff.

It is necessary to briefly review the facts. The plaintiff, Ada Brown, was born in 1897, and made her home with Evelyn Davis for a number of years, first going to live with her in 1913 in Lead, South Dakota, and remaining with her

for five or six years. Ada Brown was known in the family as a "cousin" of Mrs. Davis, having grown up with her. Mrs. Davis' family at that time consisted of her mother, Mrs. Yancey, May Yancey, her sister, and Tom Yancey, her brother, who was later killed in service, and by whose death Mrs. Davis drew small monthly payments of war risk insurance.

After Mrs. Davis had moved her family, including plaintiff, to Omaha in 1918, and after a home was bought, Ada Brown went out to Casper, where she engaged in the rooming-house and restaurant business, in which she was quite successful, and she forwarded from time to time considerable amounts of money to Mrs. Davis, a great deal of which was in remittances that are a matter of record.

The records at the Western Union Telegraph office of Casper, Wyoming, showed there were 72 wires forwarding money to a total sum of $1,754.93 from Ada Brown to Mrs. Davis, and in addition to these sums there were some 68 post office money orders transferring money from Ada Brown to Mrs. Davis, all for the purpose of taking care of and supporting this old lady and paying on her debts.

All the way through the evidence the deceased is referred to as Evelyn Davis. After she moved to Omaha she married a man by the name of Todd, but they separated soon after. Later in Omaha she married a man by the name of Graham, who only lived with her some six weeks, but he had not been heard of for some six years at the time of the trial; so that the name Evelyn Davis was the one she was usually known by.

There are letters in evidence from Mrs. Davis showing that she designated Ada Brown to have all of her property, plaintiff claiming these show that Mrs. Davis gave an equitable assignment of these policies for the money that plaintiff had sent her. These letters indicate that the deceased intended that Ada Brown should have her property, and perhaps sent her these policies, for there is testimony which shows that the old lady went to the post office in the Brandeis store, Omaha, with a woman who testifies to the

facts, and bought exhibit 23, a large envelope, and it is claimed that she sent the policies in that envelope from the Brandeis post office by registered mail to Ada Brown at Casper, and Mrs. Davis stated in the letters, and also orally, that Ada Brown should have these insurance policies, as she was furnishing the money to take care of her.

These three policies provided no beneficiary, and there is a clause in industrial policies that the insurance company may pay it to the undertaker, or any one who is equitably entitled to the money. Those clauses are legally styled "facility of payment." There appear to have been six policies at one time, but only these three were in force and effect at the time of the death of the insured. Each of these policies carried the provision that "any assignment or pledge of this policy or any benefits hereunder shall be void and of no effect." These industrial policies have many different provisions from any other kind of insurance policy.

Mrs. Davis visited plaintiff twice in Casper, staying three months the first time and two months the second time. When Mrs. Davis died, the plaintiff received a wire and came at once to Omaha, where she has since remained. The plaintiff was married to Udell Brown, who died in 1928, and she was a widow at the time of trial. The plaintiff invested money with the deceased, both in the home and also in the furniture, putting in a great part of her earnings.

The decree of the trial court contained a finding that the Metropolitan Life Insurance Company was released and discharged from all liability under the policies of insurance upon the life of the deceased. The court found there was insufficient evidence to establish a contract between plaintiff and decedent to bequeath all her property to plaintiff, but did find that, in consideration of the money advanced and services rendered by the plaintiff, the policies of life insurance were equitably assigned and possession thereof delivered under an oral agreement, and that said policies and the proceeds thereof in the hands of the clerk should be the property of the plaintiff, less the costs incurred by

the filing of the interpleader of the insurance company, and that the plaintiff should recover her costs, and the trial court found that all other property in the estate of the deceased belongs to the defendant administrator.

The defendant sets out as prejudicial errors the rulings upon motions and in the reception of evidence, and that the decree is not supported by the pleadings and is contrary to the evidence and the rules of law with respect to proceeds of life insurance policies. The defendant insists that one who claims an equitable assignment of a life insurance policy must allege and prove all of the terms and conditions of the alleged contract. The defendant insists that an assignment or pledge of a policy of insurance is in effect an attempt to change the beneficiary, and is void unless consented to by the insured and the insurer.

The defendant insists that the clause in an insurance policy known as the facility of payment clause is an exclusive privilege and provision for the benefit of the insurance company, and gives no right of action to any other person, and the courts should enforce the contract as made in an insurance policy. An industrial life insurance policy containing a clause saying that any assignment or pledge of the policy shall be void and of no effect is in itself notice to the holder of the policy of that fact.

Several references are made in the briefs to the case of *Metropolitan Life Ins. Co. v. Dunne,* 2 Fed. Supp. 165. In this late case two industrial policies were issued in 1918 on the life of one Johnson in the amount of $310 each. They were payable to his estate, and contained the usual facility of payment clause. Johnson paid the first two payments of 25 cents a week on each policy, after which Mrs. Bridget Dunne, with whom he was boarding, made all the payments. After he moved to New York state in 1925, she continued to make payments on these policies until 1929, at which time she discovered that Johnson had died three years before, and that she had paid $59.50 in premiums after his death. Johnson had delivered the policies to Mrs. Dunne in 1918, telling her they were for her little daughter, Dorothy

Dunne. The court decided that Bridget Dunne was entitled to $59.50 out of the face amount of the policies paid into court by the insurance company, and that the defendant Dorothy Dunne was entitled to the balance of the insurance money. It was held that the claim to the proceeds of the life insurance policy was not affected by facility of payment clause where insurer had failed to exercise option under that clause. It was also held that the policy provisions invalidating assignment of the policies may be waived by the insurer, and that the insurance company had waived these provisions by paying the proceeds into court. It was further held that the delivery of a life policy, under circumstances indicating a clear intent to make a gift, is a sufficient assignment, notwithstanding an absence of writing.

In the case of *New York Life Ins. Co. v. Cross,* 7 Fed. Supp. 130, it was held that the insurance company, by paying the money into court, waived objection, which the insurer alone could raise, that the beneficiaries were not formally changed in the policy. It also held that, in determining whether insured delivered life policy to beneficiary by way of gift, security, or for safe-keeping, where beneficiary's testimony is unreliable, parties' contemporary attitudes, especially if shown by documents and letters, control. In ruling upon objections to testimony in this case, the testimony of one of the claimants, designated by the insured as beneficiary under a life policy, concerning oral communications had with the insured, was held admissible, since the other claimants of the proceeds did not derive their title or interest from, through, or under deceased within the state statute.

There is one late case that this court has just handed down which is right in point. It is *Dvorak v. Kucera, ante,* p. 341, 264 N. W. 737, in which case the plaintiff loaned her husband certain sums of money, and prior to her death she orally assigned the policy of insurance to him, and our court held that an oral assignment or pledge of a life policy as security for insured's debt is valid between the parties, notwithstanding the policy provided that no assignment

shall be valid unless in writing and filed with insurer. The delivery of a life insurance policy to secure a debt of the insured, whether the policy is assigned or not, constitutes a pledge entitling the pledgee to an equitable lien upon the proceeds of the policy. *Redden v. Prudential Life Ins. Co.,* 193 Minn. 228, 258 N. W. 300; *Davis v. Murphy,* 105 Neb. 839, 182 N. W. 365.

From an examination of the entire record, we find no prejudicial error in the judgment of the trial court, and it is hereby

AFFIRMED.