INEZ V. UPTEGROVE, ADMINISTRATRIX, APPELLEE, v. METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK, APPELLANT.

15 N. W. 2d 220

FILED JULY 14, 1944. No. 31669.

*Beghtol & Rankin* and *John C. Mason,* for appellant.

*Walter D. James* and *Ira D. Beynon, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, CHAPPELL and WENKE, JJ., and NUSS, District Judge.

CHAPPELL, J.

This action was brought by the administratrix of the estate of Armpstead F. Uptegrove, her deceased husband, to recover disability benefits allegedly due and accruing to him during his lifetime, under the provisions of an industrial group insurance contract. The cause was tried to a jury, but at the conclusion of the evidence defendant moved to dismiss and plaintiff moved for judgment, whereupon the trial court discharged the jury and entered a judgment for plaintiff against defendant for the sum of $1,738 and costs, including the sum of $300 as attorney's fees taxed as a part thereof. Defendant appealed to this court, presenting for decision the sole question of whether plaintiff is the real party in interest. We find that plaintiff as administratrix was the real party in interest and the proper person to maintain the action.

By virtue of section 20-301, Comp. St. 1929, "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section * * * (20-304)", Comp. St. 1929. In giving effect to this section we have held that the real party in interest is the person entitled to the avails of the suit. *Gregory v. Pribbeno,* 143 Neb. 379, 9 N. W. 2d 485. Sections 20-304 and 30-803, Comp. St. 1929, expressly give an executor or administrator authority to maintain an action for the benefit of the estate of such a person.

An examination of the record discloses that Armpstead F. Uptegrove, who died in the State Hospital on July 24, 1940, was employed by the Franklin Ice Cream Company, and its successor Beatrice Creamery, from 1921 until he was discharged in December, 1931. During most of this period he was a competent employee. However, for some months prior to the termination of his employment he manifested serious mental and physical decline which eventually resulted in his discharge. It appears from the evidence, without contradiction, that while he was insured and before age 60 he was totally and permanently disabled due to, or accompanied by, mental incapacity which prevented him from engaging in any occupation or from performing any work for compensation or profit from a period prior to December, 1931, and until his death.

During his employment he was insured under a group or master policy issued to his employer by defendant company, who also issued to him a certificate of participation, dated April 1, 1925, evidencing his contract which was in full force and effect at the time his disability occurred. After his death the certificate was found in the employee's safety deposit box, to which his wife, the administratrix, did not theretofore have access.

In *Hemmer v. Metropolitan Life Ins. Co.,* 131 Neb. 14, 267 N. W. 153, this court held: "When the certificate delivered to an employee, to certify that he is insured under a group or master policy issued to his employer, is also executed by the same insurance company which issued the

group policy, then such policy, the application therefor, the certificate given the employee, and all amendments and riders attached to each, together constitute the entire contract between the employee and the insurance carrier." This rule is applicable here.

We must bear in mind that the insurance contract of the employee was dual in character, that is, it was insurance upon his life and against his disability. It provided for insurance upon his life in the sum of $1,500, payable after death to his wife, Inez V. Uptegrove, as beneficiary, but it also provided that if he suffered total and permanent disability as the result of injury or disease while insured and before age 60 he was to be paid by defendant during his lifetime certain disability benefits each month for a limited period of time in lieu of payment of the life insurance to his beneficiary after death. This action is to recover such disability benefits and not the life insurance. In this connection, it will be noted that all of the disability payments accrued and were due and payable to the insured employee before his death occurred. None of these payments were ever made by defendant, and the question is whether the administratrix of his estate can now recover them. The defendant contends that under the provisions of the contract the action can only be maintained by Inez V. Uptegrove in her individual capacity as beneficiary.

With reference to disability benefits, the certificate issued to the employee provides that defendant company "will pay *to such employee,* in lieu of the payment of the insurance under said policy at his death, equal monthly instalments, the number and amount of such instalments to depend upon the amount of insurance in force on the life of such employee at such date, as shown in the following table: Amount of Insurance $1,500 Number of Instalments 30 Amount of Each Instalment $51.75". The group or master policy provides, "the Company will, in lieu of the payment at death of the insurance on the life of the said employee, as herein provided, pay equal monthly instalments, as hereinafter described, (as shown above) *to the said Employee,*

*or to a person designated by him for the purpose, or, if such
disability is due to, or is accompanied by, mental incapacity,
to the beneficiary of record of the said Employee."* (Italics
supplied.) The contentions of defendant are bottomed up-
on the latter provision. The company insists that it is con-
tractually bound thereby to pay the disability benefits to
the "beneficiary of record."

We are unable to give this construction to the contract.
A beneficiary of an insurance contract is the person who is
entitled to the proceeds or benefits which accrue and be-
come payable under the contract. 29 Am. Jur., sec. 1271,
p. 948; 2 Couch, Cyclopedia of Insurance Law, sec. 305, p.
809. Therefore, it may be rightly said that Inez V. Upte-
grove, wife of the insured employee, was the beneficiary of
the life benefits after his death, but the employee was him-
self the beneficiary of the disability benefits which accrued
and became payable to him during his lifetime. *Shea v.
Aetna Life Ins. Co.*, 292 Mass. 575, 198 N. E. 909; *Foster
v. North Carolina Mutual Life Ins. Co.*, 150 S. C. 482, 148
S. E. 656.

The promise of defendant to pay disability benefits was
made to the employee. He is the person thus insured un-
der the contract and his substantive rights to payment of
all the installments became fixed when he suffered the per-
manent, total disability during the life of the certificate and
survived the 30-months' period of their duration. Not hav-
ing been paid by the company to him or the person desig-
nated by him for that purpose, then upon his death these
rights passed to his administratrix. Because of mental in-
capacity of the employee all of the conditions precedent to
recovery of disability benefits were not complied with dur-
ing his lifetime, but this was impossible under the circum-
stances and does not preclude recovery by the administra-
trix who seasonably after his death, and after obtaining
knowledge of her legal rights, made necessary proof and
claim upon defendant for payment. *Trucken v. Metropol-
itan Life Ins. Co.*, 303 Mass. 501, 22 N. E. 2d 120; *Shea v.
Aetna Life Ins. Co., supra.* It is generally held that a pol-

icy issued to the insured, he being the real party to the contract and the one to whom the benefits under the policy inure, may be sued upon by the representative of the insured's estate where loss occurred before the insured's death. 8 Couch, Cyclopedia of Insurance Law, sec. 2063, p. 6738; *Langevin v. Prudential Ins. Co.*, 132 Me. 392, 171 Atl. 392.

We find no conflict between the certificate and the group or master policy. The provision relied upon by defendant, which appears only in the master policy, is simply a facility of payment clause in which the option of payment is by agreement confined to a person to be designated or to one already designated by the insured to receive payment for him. The words "beneficiary of record" appearing therein have no significance except as an agency or a person designated to whom payment might be made for the insured. *Carruth v. Aetna Life Ins. Co.*, 157 Ga. 608, 122 S. E. 226. The defendant company could have paid the disability benefits to the "beneficiary of record" in good faith and acquitted itself of liability to the employee or his guardian during his lifetime or his representative after his death, but it neglected to do so.

While the phraseology of facility of payment clauses which appear generally in industrial insurance policies is not always identical, their definition, purpose, and legal effect are ordinarily the same. Courts have looked upon them with favor and they should be liberally construed. A facility of payment clause is merely an appointment, by agreement between the parties, of persons who may receive payment of the benefits or proceeds accruing under the contract, give receipt therefor to the insurer, in good faith discharge it from liability, and thereafter hold the amount received for the benefit of the person ultimately entitled thereto. It affords a ready method of raising money for the support, maintenance, and medical care of the disabled insured employee, but it has been generally held that such a clause is for the benefit of the insurer, to be exercised at its option, to enable it to make prompt payment without the expense of guardianship or administration proceedings,

and to remove a chance of litigation between claimants and the insurer. A facility of payment clause does not change or modify the original contract with the insured, or make the person therein designated to receive payment for him the beneficiary or owner of the proceeds, or give such person the right to maintain an action to compel the insurer to make payment to him. Therefore, the rule is that a claim to the proceeds of an industrial insurance policy is not affected by the facility of payment clause where the insurance company has failed to avail itself of the provision. Under such circumstances it cannot be used by the company to avoid liability and defeat the purposes of the policy. In the case at bar the rights of the company to pay the "beneficiary of record" for the insured and thus in good faith discharge itself of liability existed only up to the time suit was filed by the administratrix, and this cause must now be disposed of as if there were no facility of payment clause. These conclusions are supported by many authorities, including our own. See 29 Am. Jur., sec. 1278, p. 953, secs. 1279, 1280, p. 955; 31 C. J. 969-972; 2 Couch, Cyclopedia of Insurance Law, sec. 311a, p. 836; Annotation, 75 A. L. R. 1435; *Caveny v. Healey,* 94 N. J. Law 28, 109 Atl. 204; *Ogletree v. Hutchinson,* 126 Ga. 454, 55 S. E. 179; *Weddle v. Prudential Ins. Co.,* 130 Neb. 744, 266 N. W. 624; *Brown v. Ehlers,* 130 Neb. 918, 267 N. W. 156.

Without doubt, the provision relied upon by defendant means that if the employee is totally and permanently disabled, but mentally competent, the company will make the scheduled payments to him. In such case, only the employee, if living, or his representative after his death, could maintain an action to recover them. Defendant concedes as much. However, if he were so disabled, and mentally competent, but had designated a person to whom such payments might be made for him, the company could in good faith make the payments to such designated person and be relieved of liability, but if it refused to do so, then only the employee, if living, or his representative after his death, could maintain an action to recover them. If, as in the

case at bar, he is so disabled, but mentally incompetent, he thereafter could not legally designate any other person to receive the payments for him, in which event the company could in good faith under the contract have made the payments to the "beneficiary of record," the person theretofore designated by him for that purpose while he was competent, and be relieved of liability; but if it refused to do so, then only his guardian, if the employee were living, or his representative after his death, could maintain the action.

It follows that the judgment of trial court was right, and it is affirmed.

AFFIRMED.

SIMMONS, C. J., dissenting.

We are in accord here upon the proposition that, by statute, "Every action must be prosecuted in the name of the real party in interest, * * * ." Comp. St. 1929, sec. 20-301; and that, by decision, "The real party in interest * * * is the person entitled to the avails of the suit." *Kinsella v. Sharp*, 47 Neb. 664, 66 N. W. 634.

We are in accord on the proposition that "When the certificate delivered to an employee, to certify that he is insured under a group or master policy issued to his employer, is also executed by the same insurance company which issued the group policy, then such policy, the application therefor, the certificate given the employee, and all amendments and riders attached to each, together constitute the entire contract between the employee and the insurance carrier." *Hemmer v. Metropolitan Life Ins. Co.*, 131 Neb. 14, 267 N. W. 153. We are not in accord upon the construction to be given, under the above rule, to the group policy and the certificate involved in this action, and hence are not in accord upon the proposition that Mrs. Uptegrove, as administratrix, is entitled to maintain this action and receive the "avails of the suit."

This court has said: "The proceeds of a life insurance policy in which a third person is named beneficiary belong exclusively to such beneficiary as an individual; they are

not the property of the heirs of insured, are not subject to administration, and cannot properly be claimed or received by the administrator or other legal representative of insured as assets of his estate." *In re Estate of Reynolds,* 131 Neb. 557, 268 N. W. 480. It is my view that Mrs. Uptegrove, as an individual and not as administratrix, is the real party in interest.

There is no material dispute in the evidence. The defendant, hereinafter called the insurer, in 1925 issued a group insurance policy, containing total and permanent disability provisions, on the lives of the employees of the Franklin Ice Cream Company. At the same time, there was issued to plaintiff's intestate, as such an employee, a certificate that he was insured under the group policy. He will hereafter be referred to as the insured.

The insurance was in force in December, 1931, when the insured was discharged from his employment. Thereafter, he did not secure any permanent employment, and died on July 24, 1940.

The group policy contained a provision that "The Company will issue to the Employer, for delivery to each Employee * * * an individual Certificate setting forth a statement as to the insurance protection to which such Employee is entitled, the beneficiary to whom payable, * * * " and other matters.

The policy further contained a provision that "Upon receipt, * * * of due proof that any Employee, * * * has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, the Company will, * * * pay equal monthly instalments, as hereinafter described, to the said Employee, or to a person designated by him for the purpose, or, *if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record of the said Employee.*" (Emphasis supplied.)

The certificate which was issued to the insured provided that "*under and subject to the terms and conditions of*" the

group policy, he was insured for $1,500. (Emphasis supplied.) It named "Inez V. A. Uptegrove Beneficiary." It contained a provision as to a change of beneficiary and the continuance of the insurance after a change of employment. These provisions are on the first page of the certificate and above the facsimile signature of the president of the insurer. On the reverse side of the above is a page headed "Plan of Insurance"; and other headlines such as "New Employees Eligible"; "Cost"; "Beneficiaries"; and "Total and Permanent Disability Benefits". Under this heading is the following: "Under the terms of the Group policy mentioned on page one of this Certificate, any employee shall be considered totally and permanently disabled who furnishes due proof to the Company that, while insured thereunder and prior to his sixtieth birthday, he has become so disabled, as a result of bodily injury or disease, as to be prevented permanently from engaging in any occupation or from performing any work for compensation or profit." This is followed by: "Upon receipt of such proof, the * * * (company) will pay to such employee, * * * equal monthly instalments, * * * as shown in the following table: * * *." The policy and certificate both contained provisions as to the payment of benefits in the event of the death of the employee during the period of total and permanent disability. These will be referred to later herein. There are no signatures appearing on this second page. The third page is a printed letter from the employer to the employee. This letter contains the following statement: "In addition to the Life Insurance protection offered through this plan, you are entitled to the valuable benefits enumerated on the second page of this Certificate." This letter was obviously a part of the certificate as prepared by the insurer. The fourth page (which is the reverse side of the letter page) is the cover page and contains blank space for notation of change of beneficiary.

Following the insured's death, Mrs. Uptegrove found the certificate in a bank box, to which she had not had access during his lifetime. Inquiry first was made in her name.

Liability was denied on the ground that the policy had lapsed. Later, as administratrix, she claimed the benefits of the policy as payable to the estate, on the ground of her husband's total and permanent disability.

Plaintiff filed her petition herein alleging, among other things, that the insured's employment ceased in December, 1931, or January, 1932; that at that time he "was mentally incompetent and insane and remained so during the remainder of his lifetime" and "at the time of the termination of his employment the said Armpstead F. Uptegrove was totally and permanently, both physically and mentally, disabled."

The insurer by its answer specifically denied that allegation. The insurer further pleaded that "the benefits from said policy of insurance, if any are due, are payable to Inez V. A. Uptegrove and not the plaintiff herein."

At the trial plaintiff established, as found by the general finding of the trial court, that Mr. Uptegrove was totally and permanently disabled, both physically and mentally, as of December, 1931.

The insurer contends that the controlling policy language applicable to the facts here is that part quoted herein, which provides that the total and permanent disability benefits shall be payable "to the beneficiary of record" if "such disability is due to, or is accompanied by, mental incapacity," and it being established that the insured was both mentally and physically totally disabled from December, 1931, these payments were under the policy terms payable to Mrs. Uptegrove individually, she being the "beneficiary of record."

Plaintiff relies upon the language of the certificate and argues that under the certificate these monthly payments in any event are payable to the insured; that, being payable to the insured in his lifetime and not having been so paid, they are payable to his estate; and that, therefore, the administratrix is a proper party plaintiff.

We are not here concerned with the life insurance provisions of this policy, but with the disability provisions, and

then only with the question of who is entitled to receive those benefits.

The majority set out certificate and policy provisions. They say that a beneficiary is the person entitled to the proceeds "which accrue and become payable under the contract." Agreed. But who is the beneficiary "under the contract?" They answer that not by resort to, or analysis of, the contract, but by resort to the decisions of the courts in two cases, and hold that Mrs. Uptegrove was beneficiary of the life benefits *after his death,* but the insured was himself the beneficiary of the benefits which accrued and *became payable to him* during his lifetime. The case of *Shea v. Aetna Life Ins. Co.,* 292 Mass. 575, 198 N. E. 909, cited by the majority, obviously is not in point here. There the application, which was held to be a part of the insurance contract, named the wife as "death beneficiary." Here, there is no such limitation. There, the court said: *"No person* is specifically named in the insurance contract as the beneficiary of disability benefits payable thereunder. Neither the employer nor the plaintiff's wife is so named. * * * And the plaintiff's wife, though named as 'death beneficiary' under the insurance contract, is *not for that reason* also the beneficiary of disability benefits. * * * The clear implication from the contract of the company with the plaintiff for insurance against his own disability, *which names no beneficiary for disability benefits,* is that the plaintiff is such beneficiary." (Emphasis supplied.) But here, as I will presently point out, a person is named as beneficiary *under the contract* for disability benefits, under the conditions proved by plaintiff, and plaintiff, as administratrix, is not that beneficiary. *Foster v. North Carolina Mutual Life Ins. Co.,* 150 S. C. 482, 148 S. E. 656, is likewise cited by the majority. This was a suit to recover sick benefits. The policy named the plaintiff as beneficiary of *death* benefits. It provided that sick benefits should be paid to the *insured.* The court held that the plaintiff, not being the named beneficiary of sick benefits, could not recover. I find nothing in the opinion to support the majority. It is against them in

this: It holds that a court will not permit recovery of benefits by a party who is not the beneficiary named in the policy.

Now let us do what the majority in their opinion do not do, and examine the contract entered into by the insured and the insurer to determine what obligations the insurer assumed, and to whom it contracted to pay benefits. It is that contract that is binding upon the insurer, and it is that contract that courts are bound to follow. To whom are the benefits "payable under the contract"?

There are three conditions set out in the policy under which the insurer contracts to make disability payments. Beneficiaries are named in each case.

The first set of facts is that where the insured "has become totally and permanently disabled, as the result of bodily injury or disease," the insurer will pay to the insured or to a person designated by him certain monthly payments. The insured made no designation of a person to receive the payments.

The second set of facts is that where the total and permanent "disability is due to, or is accompanied by, mental incapacity," then the payments are to be made "to the *beneficiary of record of the said Employee.*" (Emphasis supplied.) This set of facts includes the first plus "mental incapacity." The "beneficiary" named in the certificate is "Inez V. A. Uptegrove."

The third provision (to be set out hereafter) is that if the insured dies during the period of permanent and total disability, any installments remaining unpaid at the date of death shall be commuted and paid "in one sum *to the beneficiary.*"

Plaintiff proved the factual condition of the second provision, i. e., she alleged and proved permanent and total disability plus "mental incapacity," but she did not bring the action in her own behalf as "beneficiary of record," for the obvious reason that as to her individual suit, the statute of limitations would be a defense. The majority combine the second factual situation, which they find to be true,

with the beneficiary of the first and thereby permit a recovery.

It is not necessary to go to the books to find out who is meant by "beneficiary" or "beneficiary of record." The insured named Mrs. Uptegrove as beneficiary and the insurer agreed to it. If Mrs. Uptegrove is the "beneficiary" named in the certificate, and the beneficiary under the life provisions, as the majority hold, and under the third disability provision, is she not also the beneficiary under the second provision? Does the word "beneficiary" in several instances mean Mrs. Uptegrove, and in one other mean the insured? The contract does not say so, and it controls. Had the parties so intended, they could have easily provided that in the case of mental incapacity, the guardian of the insured or some designated person, such as the wife, was to receive the payments for the insured. They did not so provide. The contracting parties did not overlook the possibility of a condition arising where the interest of a beneficiary should become the interest of the insured. They provided that "In case of the death of any individual named as beneficiary, the interest of such beneficiary shall vest in the Employee by whom he was designated.". A similar provision is in the certificate. They did not provide that the interest of the beneficiary, in the event the insured became disabled as the result of mental disability, should vest in and be for the benefit of the insured.

The policy clearly says that these payments are to be made *to the insured* if he becomes totally and permanently disabled without "mental incapacity"; *to the beneficiary* (Mrs. Uptegrove) if the disability is due to or accompanied by "mental incapacity"; *to the beneficiary* if the insured dies before all payments are made; *to the beneficiary* if death benefits accrue. Why should not the contract be enforced as made?

The majority, on the authority of the two cases above reviewed, determine early in their opinion that the "employee was himself the beneficiary of the disability benefits which accrued and became payable to him during his lifetime"

and later that "these rights passed to his administratrix."
I shall discuss later herein the right of the administratrix
to recover *under the terms of the policy* in that event. But
the majority having reached the conclusion above stated,
it would seem to determine the case so far as the question
here presented is concerned. But the majority do not stop
there.

They proceed further and say: "The promise of defend-
ant to pay disability benefits was made to the employee."
Agreed. "He is the person thus insured under the contract
and his substantive rights to payment of all the installments
became fixed when he suffered the permanent, total disabil-
ity during the life of the certificate and survived the 30-
months' period of their duration." This begs the question
we have to determine. The fact that he is the "insured"
does not *ipso facto* make him the "beneficiary" contrary to
the terms of the insurance contract. This statement ignores
the "due to, or is accompanied by, mental incapacity" pro-
vision of the policy, upon which the insured relies and the
clause which we have to construe. The issue here is so
made that the clause cannot be deleted and properly de-
cide the case. The majority further say: "Not having
been paid by the company to him or the person designated
by him for that purpose, then upon his death these rights
pass to his administratrix." This, of course, is on the basis
that he is the beneficiary, as well as the insured—but who
was "the person designated by him for that purpose." Out-
side of the policy, he designated no one to receive payments
for him. Within the policy he designated no one to receive
the payments for him. The policy does not say that, if he
is mentally incapacitated, the payments shall be made to
"the beneficiary of record for the benefit of and for the in-
sured." The majority read into the policy language that is
not there, and make the "beneficiary" in this one instance
an agent or trustee of the insured. Had the parties so de-
sired, they could have so provided. They did not, and it is
not contended from anything in evidence or in the policy
that they so intended.

The majority then go on to say that the action was timely brought. It is not now claimed that the statute ran against the insured, he having been found to be under the disability of "mental incapacity." The majority next hold that ":a policy issued to the insured, he being the real party to the contract *and the one to whom the benefits under the policy inure,* may be sued upon by the representative of the insured's estate where loss occurred before the insured's death." The language quoted is taken almost verbatim, as the majority show, from 8 Couch, Cyclopedia of Insurance Law, sec. 2063, p. 6738. The majority should have read further. The first sentence of the second paragraph of the same section is: "Although an administrator *cannot* sue on a policy on the life of his intestate *where a beneficiary is named,* as a general rule the contrary is true where the policy is payable to the insured, his executors, administrators, etc." (Emphasis supplied.) See, also, *In re Estate of Reynolds, supra.* The language above quoted from the majority opinion may be a general rule, when it is first determined that the insured is the beneficiary and in the absence of a provision as to payment in the event of death, and there is such a provision here, as I shall later point out.

The majority then state: "We find no conflict between the certificate and the group or master policy." If there is no such conflict, then it is because the language in the certificate to the effect that in the event the insured becomes totally and permanently disabled, the insurer will pay "to such employee" the disability benefits, is not in conflict with the provision that in the event of mental incapacity, the payments are to be made to the beneficiary of record, and the latter provision becomes one modifying the first. Under the rule stated in *Hemmer v. Metropolitan Life Ins. Co., supra,* that construction seems proper.

The majority then state that the provision relied on by the insurer "is simply a facility of payment clause in which the option of payment is by agreement confined to a person to be designated or to one already designated by the insured to receive payment for him." As already pointed out,

extraneous of the policy, the insured designated no one to receive payment for him. The majority then say the words "beneficiary of record" appearing in the policy "have no significance except as an agency or a person designated to whom payment might be made for the insured." The majority cite, as their sole authority here, *Carruth v. Aetna Life Ins. Co.*, 157 Ga. 608, 122 S. E. 226. The case, if I read it correctly, is against their contention here. There was no facility of payment clause involved in that case. There, the defendant insurance company issued a group policy in which the *employer* was named as beneficiary. Certificates were issued to the employees providing that the amount of insurance on each employee would be paid to certain designated relatives and "If neither survive you, to your estate." There being no living relatives within the named classes, the administratrix *in equity* sued both the insurer and the employer. The question was raised as to whether or not the plaintiff could maintain the action. The court held that the policy and the contract must be construed together (as we agree should be done here) ; that the employer was the beneficiary in the policy and the employee the beneficiary in the certificate; that the employee had a beneficial interest in the contract between the insurer and the employer; that the employer had a mere right to the possession of the fund and a duty to pay it to the employee; that the insurer used the employer as an agency to pay the money to the employee; and that the plaintiff was the real party in interest and could maintain the action. The majority use a part of the language from one sentence in the body of the opinion. They stop too quickly. The court there said: "The use of the two following words 'as beneficiary' (in the policy following the name of the employer) has no significance beyond a narrow technical meaning, *when considered in connection with the certificate;* for the certificate *confines* the *possession* of the fund to the mere duty of paying the money over to the holder of the certificate * * * ." (Emphasis supplied.) In the instant case the use of the words "beneficiary of record," *"when considered in connection with the*

*certificate"* can mean only one thing, and that is Mrs. Uptegrove, individually, for the certificate so states in unmistakable language that she is the "beneficiary," and neither the certificate nor the policy confine "the possession of the fund to the mere duty of paying the money over" to the insured or for his benefit. It is clear in the *Carruth* case that had there been a husband or child, or father or mother of the insured, they and not the administratrix would have been the real parties in interest to bring the suit, for, as pointed out, the estate was a beneficiary contingent upon the circumstance that none of the named relatives "survive" the insured. The estate there took, not on the ground that the benefits were payable to the insured and, not having been paid, were due to the estate. The estate took there as a named beneficiary under the terms of the certificate. And here, under the terms of the certificate, Mrs. Uptegrove, and not the estate, is the beneficiary. The *Carruth* case points inescapably to the conclusion that Mrs. Uptegrove, individually, is the real party in interest, she being the "beneficiary," "when (the policy is) considered in connection with the certificate." The *Carruth* case is cited in 8 Couch, Cyclopedia of Insurance Law, sec. 2094, p. 6793, as holding that the employer " * * * is merely a trustee of the employees, or an agent for distribution, and the beneficiary or his personal represenative is the real party in interest, and may sue on the contract, * * * ." If the majority now propose to turn this decision upon the *Carruth case,* then it is upon the proposition that Mrs. Uptegrove as "beneficiary of record" was in fact a trustee or agent for the insured, and that he was the beneficiary of the trust. I, accordingly, suggest that the majority should then determine whether or not there is a defect of parties here, and whether or not the remedy of the administratrix, if she has one, is not in equity. Mrs. Uptegrove as "beneficiary of record" is not a party to this action. I shall not undertake to determine that question, except to point out that the Code provision, Comp. St. 1929, sec. 20-304, cited by the majority at the beginning of their opinion, authorizes the "trustee of an ex-

press trust" or a person "in whose name a contract is made for the benefit of another" to bring an action without joining the beneficiary. It does not say that a beneficiary can bring an action without joining the trustee or the person in whose name the contract is made. It is said that "Even in a court of equity, * * * the trustee is generally an indispensable party, * * * ." 65 C. J., sec. 758, p. 868. I point out that in the *Carruth* case, solely relied on for this proposition, the plaintiff proceeded in equity against both the insurer and the agent, or, as Couch says, the trustee. See 2 Restatement, Trusts, 862.

The majority, without analyzing the clause and without more, discuss the terms and effects and benefits of a facility of payment clause. I shall not enter into that. The majority do not show upon what basis this language becomes a facility of payment clause. And that is the question that is to be determined before the effect of such a clause need be considered. A facility of payment clause is one which, within limits, " * * * confers on the company an option as to whom it will make payment." 31 C. J., sec. 7, p. 969. Generally, they are of two classes: Either the insurer has an option to pay to one whom it considers equitably entitled thereto, or is confined to certain designated classes. 29 Am. Jur., sec. 1278, p. 954; 135 A. L. R. 956. Such a clause permits the insurer to make payment to any one of two or more beneficiaries, under any one condition or set of facts. 31 C. J., sec. 7, p. 969; 29 Am. Jur., sec. 1278, p. 953. The fact that a policy provides for the payment of benefits to *different* beneficiaries under *different* sets of facts does not make a facility of payment clause out of the provisions, and does not authorize either the insurer or a court to pick out a named beneficiary under one set of facts, and make that beneficiary the beneficiary also under another set of facts, and that contrary to the language of the policy. This court in *Weddle v. Prudential Ins. Co.,* 130 Neb. 744, 266 N. W. 624, said: "The 'facility of payment' clause provides that the company may or may not elect to pay to another equitably entitled to the benefit, rather than the

beneficiary named in the policy." There is no such provision in this policy. The election is to be made by the insurer, not the insured. The only election provided for in this policy is a right given to the *insured* to designate a person to receive payment for him in the event he is permanently and totally disabled not due to or accompanied by mental incapacity, *and that right of election was not exercised.* Where in this policy is there any right of election on the part of the insurer? The majority point out none. Even if the majority construe the policy as meaning that the payments to the "beneficiary of record" are for the use and benefit of the insured, the fact would still remain that there is no election given to the insurer to whom to pay. It had no choice but to pay to Mrs. Uptegrove as "beneficiary of record." The policy does not say that the insurer can pay to the "beneficiary of record" or to his guardian or to any one else. I find no mention of a "guardian" in the policy, and the majority say that the purpose of a facility of payment clause is to enable payment to be made "without the expense of a guardianship."

The majority then dispose of the facility of payment clause discussion with the statement: " * * * this cause must now be disposed of as if there were no facility of payment clause." Just how much of the clause they thus read out of the policy and refuse to apply is not clear. The minimum language so deleted would be: "Or, if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record of the said employee," leaving the clause so as to provide that the monthly payments shall be made to the insured or to a person designated by him (and no person has been designated). With that language removed (and I do not agree it should be), the payments not having been made, and the insured dead, to whom does the policy say the payments shall be made? As pointed out, the majority, without reference to the policy, have assumed that they then become payable to the administratrix. However, the policy provides: "The first monthly instalment will be paid upon receipt of due proof of total and permanent dis-

ability, in which event the insurance herein provided under this Policy, on the life of the said Employee, shall cease to be in force and no further premiums will be payable on account thereof. During the period of total and permanent disability the said Employee shall not have the right to receive in one lump sum, the commuted value of any unpaid monthly instalments, but, if the said Employee dies during such period, any instalments provided herein, remaining unpaid at the date of death, shall be commuted at the rate of three and one-half per centum per annum, compound interest, and paid in one sum to the *beneficiary.*" This applies, of course, to payments that were payable to the insured during his lifetime, but which were not paid to him because of his death. The payments were to be made beginning not with permanent and total disability, but upon receipt by the company of due proof of that disability. That due proof was not made during his lifetime, so that the company was not obligated to begin to pay until after his death. They did not contract to pay to the insured in any event. The insurer contracted to pay to the insured, if entitled thereto, during this period of permanent and total disability for not to exceed 30 months, but if he died during the period of total and permanent disability, then the payments "remaining unpaid" were to be commuted and paid "to the beneficiary," and the beneficiary is Mrs. Uptegrove, individually. So we come out on that basis at exactly the same conclusion, and that is: These payments, not paid during the insured's lifetime, do not go to his estate, but to his beneficiary, and this plaintiff, as administratrix, is not that beneficiary. I suggest that if it is proper for the parties to contract that payments which would otherwise go to the insured may be cut off in the event of his death and then accrue not to his estate but to his beneficiary, it is also proper for the parties to contract that those payments may likewise be cut off and accrue to his beneficiary in the event the insured becomes mentally incapacitated, and that is what this policy does as I read it.

One thing further requires notice. The majority say that

the insurer "could have paid the disability benefits to the 'beneficiary of record' in good faith and acquitted itself of liability to the employee or his guardian during his lifetime or his representative after his death, but it *neglected* to do so" and (later in the opinion) that the right "existed only up to the time suit was filed by the administratrix." I take it that this means that the insurer, not having paid to Mrs. Uptegrove as "beneficiary of record" before she sued as administratrix is now estopped to assert that the payments are due to the beneficiary under the contract. The facts here in evidence are that the insurer did not know of any claim of liability during the lifetime of the insured. The plaintiff testified that she did not know of this insurance during the insured's lifetime. Accordingly, no claim was made during "his lifetime." The majority find that the necessary proof and claim were a "condition precedent * * * not complied with" during the insured's lifetime. There is, accordingly, no basis for holding that the insurer "neglected" to pay during "his lifetime." The correspondence between the plaintiff's attorney and the insurer is in evidence. After the insured's death and after the certificate was discovered, the insurer was notified and inquiry made as to "benefits" to which Mrs. Uptegrove personally was entitled. The company advised her that there was "no death benefit" payable, the certificate having been canceled on February 28, 1933. Some weeks thereafter claim was made by plaintiff, as administratrix, in which it was "presumed" that the insured had not made a claim because of his mental condition. Thereafter the insurer sought information as to the insured's mental condition, its extent, when it arose, etc. I find in the correspondence no assertion on the part of the plaintiff that the insured was from December, 1931, permanently and totally disabled from mental disability. On the contrary, I find that insurer repeatedly asked for a statement as to when the mental incompetency began and received answers that it was "impossible to say;" that the disease was progressive; and that "At the time he lost his employment he appeared to have mental lapses" and

"became totally disabled about the time that he quit his employment." The plaintiff did not fix the beginning of the period of mental incompetency as at the time of insured's discharge from his employment, until she filed her petition in this action. The defendant had no opportunity to assert its defense until after suit was brought. The above allegation in the petition was denied, and it was not until the trial of this case that plaintiff by her own testimony, and by the testimony of an expert based largely upon plaintiff's recital of facts, established that fact to the satisfaction of the trial court. Under these circumstances, the insurer should not be held to have "neglected" to pay during insured's lifetime and prior to the beginning of this litigation, nor should it be held estopped to present its defense.

I have no doubt but that insurer could have paid the benefits to the "beneficiary of record" and acquitted itself of liability, and that had it done so, this litigation would not have followed. But the insurer recognized that the law gave it a defense, in the statute of limitations, to the claim of the "beneficiary of record." It did not waive that defense. The courts have no right or power to compel it to do so. Neither do the courts have the right or the power to compel the insurer to pay the insured's estate money which, save for the statute of limitations, it was clearly obligated to pay to the beneficiary of record, Mrs. Uptegrove. Courts have no right or power to compel one party to pay money to another party, except by the processes and for the reasons authorized by law. In my judgment, the decision of the majority is wrong.

Nuss, District Judge, concurs in this dissent.